Mildred and Israel T. KLAPPER, Plaintiffs,

v.

COMMONWEALTH REALTY TRUST, an unincorporated real estate investment trust organized under the laws of the Commonwealth of Pennsylvania; Country & New Town Properties, Inc., a Delaware corporation; C.N.T. Properties (U.S.), Inc., a Delaware corporation; Geoffrey A. Adkin, David Newton, Gerald M. Newton, Edward B. Stokes and William Zucker, Defendants.

Civ. A. No. 85–686CMW.

United States District Court, D. Delaware.

March 31, 1987.

Stay Granted and Appeal Certified June 22, 1987.

Irving Morris, Kevin Gross, and Carolyn D. Mack, of Morris and Rosenthal, Wilmington, Del., Martin H. Philip, of counsel, Palmerton, Pa., for plaintiffs.

William Prickett, John H. Small, and Wayne Carey, of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., Andrew J. Levander, and Adam B. Rowland, of Shereff, Friedman, Hoffman & Goodman, of counsel, New York City, for defendants.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

The plaintiffs, minority shareholders in a Real Estate Investment Trust, filed this action against the controlling stockholders of the Trust, alleging, *inter alia*, violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.* The plaintiffs' amended ·complaint charged that defendants, the

controlling stockholders, engaged in a "pattern" of racketeering activity in violation of RICO. The plaintiffs further alleged that the pattern of racketeering activity consisted of: (1) mail and wire fraud relating to the diversion of a business opportunity; (2) mail and wire fraud relating to the usurpation of Trust dividends; and (3) mail and wire fraud in connection with attempted securities fraud.

Defendants' motion to dismiss countered that the plaintiffs lack standing to bring a RICO action because any injury was to the Trust; that the plaintiffs failed to adequately allege a RICO "enterprise"; and that plaintiffs did not sufficiently allege a "pattern" of racketeering activity. Defendants also filed a Motion for Rule 11 Sanctions against plaintiffs' attorneys for bringing frivolous claims.

This matter was referred to a Magistrate who, after hearing arguments and reviewing briefs on the matter, issued a report finding that plaintiffs did not have standing to bring this action. The report also suggested that the action be dismissed because the plaintiffs failed to adequately allege a RICO enterprise or a pattern of racketeering activity. The report, however, recommended against Rule 11 sanctions.

Although the Court agrees with the Magistrate's Report that Rule 11 sanctions should not be imposed, it cannot concur that the action should be dismissed. Accordingly, this Court holds that: (1) plaintiffs have standing to maintain a RICO violation; (2) the plaintiffs adequately alleged a RICO enterprise for purposes of 18 U.S.C. §§ 1962(a) and (b), but not 18 U.S.C. § 1962(c); and (3) that plaintiffs adequately alleged a "pattern of racketeering activity." The Court denies defendants' motion to dismiss and grants plaintiffs leave to amend the complaint.

FACTS

Plaintiffs Mildred and Israel T. Klapper (the "Klappers") own 108 shares of the Commonwealth Realty Trust (the "Trust"), a Pennsylvania business trust organized to own and hold real estate. The Klappers commenced this class action lawsuit on No-

vember 25, 1986, to challenge the proposed merger between the Trust and C.N.T. Properties (U.S.), Inc. ("Properties"). Properties is a newly formed Delaware corporation that is 90% controlled by Country and New Town Properties, Inc. ("CNTP")—another Delaware corporation that owns and otherwise deals in real estate. CNTP is a wholly owned subsidiary of Country and New Town Properties (Holdings) B.V. ("Holdings"), a Netherlands corporation. Holdings, in turn, is controlled by two British entities: The British and Commonwealth Shipping Company, PLC ("B & C"), and the Country and New Town Properties, p.l.c. ("C & N"). See Diagram at Appendix One.

The two British companies—B & C and C & N—and their Netherlands subsidiary, Holdings, organized the Delaware corporation CNTP to hold real estate in the United States. The proposed merger would have joined the Trust with Properties, with Properties being the only surviving corporation. Only Properties, the Trust, and CNTP are corporate defendants in this action. Collectively, however, B & C, C & N, Holdings and CNTP constitute the "Controlling Stockholders" of the Trust.

The individual defendants in this action—Adkin, D. Newton, G. Newton, Stokes and Zucker—are all trustees of the Trust.

In 1981, the Controlling Stockholders, through CNTP, gained undisputed control of the Trust. (They currently own approximately 74% of its outstanding shares). By 1983, the Controlling Stockholders had also positioned their nominees in key management positions. Although defendants Stokes and Zucker are independent members of the Board of Trustees, the other three members—Adkin, D. Newton and G. Newton—are all affiliated with the "Controlling Stockholders". G. Newton, for example, is Chairman and Managing Director of C & N, Director of Holding, Chairman of the Board of CNTP, Chairman of the Board of Property, and Trustee of the Trust.

The heart of plaintiffs' contention is that a series of transactions executed by the Controlling Stockholders constituted a pattern of racketeering activity in violation of

the Racketeering Influenced and Corrupt Practices Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* These transactions are: (1) the Plainsboro Transaction; (2) the CCM Arrangement; and (3) the attempted merger of Trust and Properties.

The Plainsboro transaction involved a loan of $4,075,000 made by the Trust to the Plainsboro Limited Partnership ("PLP"), a New Jersey Limited partnership in which CNTP is both a general partner and a limited partner in another entity which is also a general partner of PLP. The loan was to finance a land transaction in Plainsboro, New Jersey. The loan was to enable PLP to acquire and develop a 40–acre tract of land. PLP gave the Trust a mortgage to secure the loan, but this mortgage was wholly subordinated to existing mortgages as well as to any construction financing which PLP obtains for development of the land. Developing property is the type of activity in which the Trust engages.

The second transaction bearing upon the relationship between the Controlling Stockholders and the Trust is an arrangement with Country and Commonwealth Management, Inc. ("CCM"). The Trust made CCM a wholly-owned subsidiary of CNTP which annually receives substantial money from the Trust for "real estate and advisory services." Gerald Newton, the Chairman of the Board of CNTP, is also Chairman of the Board of CCM. The Controlling Stockholders, therefore, were allegedly usurping a corporate opportunity through the PLP transaction and diverting dividends from stockholders in the CCM transaction. Both allegedly directly injured the plaintiff stockholders by reducing the dividends they were to receive.

The third important transaction was the aborted Trust-Properties merger—the incident that triggered this litigation. On June 19, 1985, defendants Stokes and Zucker, Trustees of the Trust, were appointed to act as a Special Committee to consider the merger of Trust into Properties. The Special Committee then retained independent legal counsel and hired Management Planning, Inc., an independent investment and financial consulting firm, and Jackson Cross Company, an independent real estate appraiser. The Special Committee chose not to retain an independent financial advisor to act for the minority shareholders in the Trust. Instead, using the management company and real estate advisor, the Special Committee eventually determined that the fair price per share for the merger was $12.70.

On September 26, 1985, the Trust entered into a Merger Agreement that required all Trust shareholders other than CNTP and its affiliates to exchange their shares at $12.70 on the merger date: November 26, 1985. The Merger Agreement contained, as a condition precedent, a clause providing that "[n]o action or proceeding before any court ... shall have been commenced (and be pending) ... against the Trust, CNTP, Properties or any of their respective affiliates, associates, offices, directors or trustees seeking to challenge the Agreement or Merger."

On November 4, 1985, the Trust sent to all shareholders a Notice of Merger disclosing the details of the merger and the Special Committee's price evaluation. The Notice of Merger specifically rejected the conclusions of an earlier real estate appraisal that had been performed by Strouse, Greenberg and Co. (The appraisal had been made in connection with the financial statement prepared by CNTP's parent company C & N). The appraisal valued the Trust's Pennsylvania office buildings at an amount $11 million higher than the value determined by the Special Committee's advisor. If this figure were accurate, the price per share for merger purposes should have been $19.70 rather than the $12.70 determined by the Special Committee. In the Notice, the Special Committee rejected the Strouse, Greenberg appraisal as having been for a different purpose and as having been based solely "on the income approach." It appears, however, that the Jackson Cross appraisal was also based on the income approach.

Three weeks after the Notice went out to shareholders, on November 25, 1985—the eve of the scheduled merger—the defendants aborted the transaction because of

litigation brought in Pennsylvania State Court by a Philadelphia investor who owned 59,450 shares of the Trust. *I. Wistar Morris, III v. Commonwealth Realty Trust, et al.*, Pennsylvania Court of Common Pleas, Philadelphia County, Civil Trial Division, November Term, 1985, No. 3421. The merger was not terminated until the close of business on that day. The very same day, however, plaintiffs in the instant action filed this class action lawsuit. The complaint asserted that the merger violated the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5 promulgated thereunder. The complaint also challenged the defendants' course of dealing toward the minority shareholders under the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. §§ 1961, *et seq.* The plaintiffs and their attorney did not know about the aborted Merger Agreement until December 2, 1985 when counsel for defendants contacted plaintiffs' counsel. After further discussion between the parties, defendants filed a motion to dismiss and for Rule 11 sanctions on January 16, 1986. Three weeks later, on February 8, 1986, plaintiffs served the Amended Complaint. Plaintiffs conceded that the termination of the merger mooted their claims under 15 U.S.C. § 78j(b) and Rule 10b–5, but pressed ahead with their RICO claims.

On January 29, 1986, by Court Order, this matter was referred to a U.S. Magistrate. On March 4, 1986, defendants filed another motion to dismiss the plaintiffs' amended and supplemental complaint pursuant to Rule 12(b)(6) and for sanctions pursuant to Rule 11. The matters were fully briefed and oral argument was held before the Magistrate on August 19, 1986. The Magistrate issued his Report and Recommendation on November 7, 1986, and both parties timely filed objections thereto.

The Court now reviews the Magistrate's Report.

DISCUSSION

I. THE STANDARD OF REVIEW

In reviewing a Magistrate's Report, the District Court is directed by the Judicial Procedure Act, 28 U.S.C. § 636 (1986), to apply one of two standards of review, depending on whether the motion reviewed is dispositive or non-dispositive. Either a de novo or a clearly erroneous standard governs. The Magistrate's Report concerned two motions: defendants' motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. The first is a dispositive motion, and the second is not.

28 U.S.C. § 636(b)(1)(A) permits a judge to have the Magistrate decide any "pretrial matter" except certain specified motions. These exceptions are motions which Congress considered to be "dispositive." *See United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). Because under Section 636(b)(1)(A), the Magistrate does not dispose of the entire case, Congress provided that a court need only determine if the Magistrate's Report is "clearly erroneous or contrary to law."

But, if the matter is considered referred to the Magistrate by motion under Section 636(b)(1)(B), then the matter is a dispositive motion and this Court is obligated to review the Magistrate's Order by a "de novo determination." A de novo determination does not necessarily mean a de novo hearing. Rather, this Court is to make its own determination on the basis of "[the] ... record [developed before the magistrate], without being bound to adopt the findings and conclusions of the Magistrate." *Aluminum Co. of America v. United States E.P.A.*, 663 F.2d 499, 501 (4th Cir.1981), *quoting* House Report No. 94–1609, P.L. 94–577, *reprinted at* [1976] U.S.Code Cong. & Ad.News 6162. Congress intended to permit whatever reliance a District Court Judge, in the exercise of sound judicial discretion, chose to place on a Magistrate's proposed findings and recommendations, *Raddatz*, 447 U.S. at 676, 100 S.Ct. at 2412.

 This de novo standard will be applied to the Magistrate's Report insofar as it concerns defendants' motion to dismiss. § 636(b)(1)(B). A "clearly erroneous or contrary to law" standard will be applied

to defendants' motion for Rule 11 sanctions. 28 U.S.C. § 636(b)(1)(A).[1]

In reviewing a motion to dismiss under a de novo standard, the Court will examine the amended and supplemental complaint in the light most favorable to the plaintiffs, and will not dismiss the complaint unless it appears to a certainty that the plaintiffs are not entitled to relief under any set of facts which they could provide in support of their claim. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Melo-Sonics Corp. v. Cropp,* 342 F.2d 856 (3d Cir.1965).

## II. DEFENDANTS' MOTION TO DISMISS

The defendants argue that the amended complaint must be dismissed on three grounds: (1) plaintiffs lack standing to allege a violation of RICO under 18 U.S.C. § 1964(c); (2) the RICO claim fails to allege a proper RICO "enterprise"; and (3) plaintiffs did not sufficiently allege a "pattern" of "racketeering activity" under 18 U.S.C. § 1962. The Magistrate was persuaded by all three of these arguments. This Court is not convinced, however, and will grant plaintiffs leave to amend.

### A. RICO Standing

In 1970, Congress took dramatic action to curb the infiltration of business organizations by criminal racketeers. The result was Title IX of the Organized Crime Control Act of 1970, Pub.L. 91–452, 84 Stat. 923 (1970). The Racketeering Influenced and Corrupt Organization Act, *codified at* 18 U.S.C. §§ 1961–68, provides for both criminal and civil liability. It permits civil actions by both the government and private litigants. 18 U.S.C. § 1964(c).

■ Although the precise requirement for establishing a civil RICO cause of action depends on which subsection of the statute a plaintiff invokes, the following are the essential elements of any civil RICO action: (1) the existence of a RICO "enterprise"; (2) the existence of "a pattern of racketeering activity"; (3) a nexus between the defendant, the pattern of racketeering activity or the RICO "enterprise"; and (4) resulting injury to plaintiff, in his "business or property." *See Eaby v. Richmond,* 561 F.Supp. 131, 133–134 (E.D.Pa. 1983).

■ The fourth prong provides that standing to bring a civil RICO violation belongs to "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). The requirement that a plaintiff suffer a direct injury as a result of the enumerated predicate acts has been taken to mean that a "plaintiff may not seek [ ] RICO standing simply as a shareholder of an injured corporation." *Gallagher v. Canon U.S.A., Inc.,* 588 F.Supp. 108, 110 (N.D.Ill.1984); *Rand v. Anaconda-Ericcson, Inc.,* 794 F.2d 843, 849 (2d Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986). *Cf., Sedima, S.P. R.L. v. Imrez Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). *But see Terre du Lac Association, Inc. v. Terre du Lac, Inc.,* 772 F.2d 467, 472–73 (8th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1460, 89 L.Ed.2d 718 (1986). This Court agrees that the requirement of direct injury is the gravamen of RICO standing. The Court also concurs that a shareholder of a corporation does not suffer direct injury merely when the corporation itself is harmed. But the case of first impression presented to the Court today is whether the shareholders of a Real Estate Investment Trust have standing to bring a RICO claim. Put another way, the Court must decide whether a REIT and a corporation are sufficiently different such that they should be treated separately for standing purposes.

■ In rejecting any important distinction between a REIT and a corporation, the Magistrate relied primarily on one district court case which held that "a REIT in particular is, in all respects other than tax

---

**1.** Defendant cites no authority for the assertion that the Magistrate's recommendations regarding Rule 11 should be reviewed under the de novo standard. *See* Defendant's Statement In

Opposition to The Plaintiffs' Objections To The Magistrate's Report and Recommendations, p. 17, n. 13.

treatment, functionally indistinguishable from a corporation. . . . [I]t is appropriate to judge the conduct of REIT trustees by the standards generally applied to corporate fiduciaries." *Terrydale Liquidating Trust v. Barness,* 611 F.Supp. 1006, 1016–17 (1984). This case, however, never reached the question of whether a REIT and a corporation are the same for RICO standing purposes—the holding of the case is merely that the two are the same for purposes of gauging a fiduciaries' duties. Because they possess common characteristics—centralized management, transferable ownership, continuity of life, and an independent legal existence—it may well be that shareholders of REIT's should anticipate the same duty of loyalty from their trustees as corporate shareholders expect from directors. Without this duty of loyalty, neither entity could function with so large a delegation of responsibility to a central management team.

But even the *Terrydale* court admits that the two entities differ with respect to one critical characteristic: how they are taxed. *Id.* And taxation goes directly to the question of direct injury lying at the heart of the standing issue. Whenever there is a diversion of corporate opportunity or funds, as is alleged here, a REIT shareholder is more directly affected than a shareholder of a corporation. This is because a REIT is obligated to pass on 95% of all ordinary non-capital gain income to its shareholders. If a REIT fails to do this, it is treated as a corporation. *See Belle View Apts. v. Realty Refund Trust,* 602 F.2d 668, 669 (4th Cir.1979); Stand.Fed. Tax.Rep., (CCH) ¶ 4099F.015, at 46.511 (1986).

The Court may well determine that the very reason for the proposed merger in this case was that management decided to change their investment vehicle from a REIT to a corporation to promote earnings accumulation to finance future purchases. The minority shareholders, however, expect that by investing in a REIT, they may be presumed to anticipate receiving distributions of the Trust's income. When shareholders invest in a corporation, they calculate that the corporation's managers will exercise their judgment in deciding whether to reinvest earned income. But REIT shareholders have very different presumptions, and any injury to the corporation and its ability to earn income is a direct injury to the shareholders.

Defendants argue, in objection to the Magistrate's Report, that plaintiffs failed to allege an injury to dividends in their pleadings. Defendants' Obj. at 4. The amended complaint, however, specifically alleges that "[t]he payments to CCM diverted money from the Trust to the advantage of CNTP and the other Controlling Stockholders." Amended and Supplemental Complaint at ¶ 18(c).[2] The implication of this is that because of money diverted or misspent by the REIT Trustees and Controlling Stockholders, the plaintiffs were directly injured because their dividends were reduced. Because pleadings are liberally construed, the Court finds that the plaintiffs have sufficiently alleged a diversion of dividends so as to constitute an injury that serves as the basis for standing.

### B. The RICO Enterprise

Having established that plaintiffs have standing under 18 U.S.C. § 1964(c) as a proper "person," they must next demonstrate a violation of Section 1962. Under Sections (a), (b), and (c) of 1962, the plaintiffs can only recover by establishing the existence of a RICO "enterprise." The Magistrate accepted two arguments put forward by the defendants in concluding that plaintiffs have not properly pled an "enterprise." He concluded that: (1) the named enterprise may not also be the defendant for purposes of all three Sections; and (2) the plaintiffs' complaint did not adequately allege a RICO enterprise. The Court, upon careful review, believes plaintiffs have properly pled a RICO enterprise.

#### 1. The Demise Of The Person/Enterprise Distinction

##### a. Section 1962(c)

For purposes of Section 1962(c), the Court holds that a defendant cannot be the

---

**2.** Hereinafter referred to as "Am.Comp."

same as the RICO enterprise. Section 1962(c) makes it unlawful for a "person" employed or associated with an enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...." 18 U.S.C. § 1962(c).[3] Almost every Circuit, including this one, interprets this language to mean that the "person" [4] charged with the RICO violation may not be the "enterprise" itself.[5] *B.F. Hirsch v. Enright Refining Co.*, 751 F.2d 628, 634 (3d Cir.1984). *See Schoenfield v. First Commodity Corp.*, 793 F.2d 28, 31 (1st Cir.1986) (the language of the section requires this result). *Contra United States v. Hartley*, 678 F.2d 961, 988 (11th Cir.1982), *cert. denied*, 459 U.S. 1183, 103 S.Ct. 834, 74 L.Ed.2d 1027 (1983). This distinction comports with the legislative history which suggests that Section 1962(c) liability focuses "on the culpable party and [recognizes] that the enterprise itself is often a passive instrument or victim of the racketeering activity." *Bennett v. United States Trust Co.*, 770 F.2d 308, 315 (2d Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986).

Refusing to allow the defendant to be the same as the enterprise, "is consistent with the Congressional scheme to orient Section 1962(c) toward punishing the infiltrating criminals rather than the legitimate corporation which might be an innocent victim of the racketeering activity in some circumstances." *B.F. Hirsch v. Enright Refining Co., Inc.*, 751 F.2d 628 (3d Cir. 1984). If Section 1962(c) were read any other way, an anomalous result would be reached—namely, the person would be employed by or associated with itself. *United States v. DiCaro*, 772 F.2d 1314, 1319 (7th

Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1458, 89 L.Ed.2d 716 (1986).

In the case at bar, plaintiffs have alleged that the defendants are the same as the enterprise. Am.Comp. at ¶ 22. The enterprise is said to be "an association-in-fact consisting of all the defendants who have conspired together acting for themselves...." *Id*. This portion of the complaint must be dismissed.

*b. Section 1962(a)*

■ The Third Circuit, however, has never decided whether the enterprise/defendant distinction applies to Section 1962(a). The Circuits are split. *See United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1190–91 (4th Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983) (the distinction applies); *Contra, Haroco, Inc. v. American Nat. Bank & Trust Co.*, 747 F.2d 384, 401–02 (7th Cir. 1984), *aff'd.*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985) (the distinction does not apply). The Magistrate's Report relied on a recent New Jersey District Court opinion to conclude that the enterprise/person distinction must apply to all 1962 Sections. Mag.Op. at 9–10. This Court believes, however, that, for pleading purposes, the weight of authority and the persuasiveness of reasoning suggest the defendant can be the same person as the enterprise.

In *Kredietbank N.V. v. Joyce Morris, Inc.*, No. 84–1903, slip op. at note 4 and accompanying text (D.N.J. January 9, 1986) [Available on WESTLAW, DCTU database], the district court ruled that the defendant and the enterprise must be distinct, relying primarily on the language of Section 1962(a).[6] "[S]ubsection (a), like

---

3. Section 1962(c) provides:

 It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt.

4. The "person" who is prohibited from committing the illegal acts enumerated by Section 1962 is defined as "any individual or entity capable of

holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3).

5. The "enterprise" which the "person" acquired an interest in, established, or operated with illegally obtained income is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

6. Section 1962(a) provides:

 It shall be unlawful for any person who has received any income derived, directly or indi-

each of the other subsections of § 1962, speaks of a 'person' committing the unlawful act in connection with, but distinct from an 'enterprise' ... [the court] is convinced that the consistent use of the two different words 'person' and 'enterprise' throughout section 1962, indicates an intention to distinguish between those actions throughout." *Id.* This interpretation of Section 1962's language, however, has been rejected by three recent district court opinions in this Circuit. The most well reasoned relies on the Seventh Circuit's observation in *Haroco, Inc. v. American Nat. Bank & Trust Co.*, 747 F.2d at 401–02 that:

> As we parse subsection (a), a "person" (such as a corporation-enterprise) acts unlawfully if it receives income derived directly or indirectly from a pattern of racketeering activity in which the person has participated as a principal within the meaning of 18 U.S.C. § 1962, and if the person uses the income in the establishment or *operation* of an enterprise affecting commerce. Subsection (a) does not contain any of the language in subsection (c) which suggests that the liable person and the enterprise must be separate.
> Under subsection (a), therefore, the liable person may be a corporation using the proceeds of a pattern of racketeering activity in its operations. This approach to subsection (a) thus makes the corporation-enterprise liable under RICO when the corporation is actually the direct or indirect beneficiary of the pattern of racketeering activity, but not when it is merely the victim, prize, or passive instrument of racketeering. *Quoted in Vietnam Veterans of America, Inc. v. Guardon Industries, Inc.*, 644 F.Supp. 951, 956–57 (D.Del.1986).

*Accord. Comm. of Pennsylvania v. Derry Const. Co.*, 617 F.Supp. 940, 943–44 (W.D. Pa.1985); *B.F. Hirsch, Inc. v. Enright Refining Co.*, 577 F.Supp. 339 (D.N.J.1983),

*aff'd. in part and vacated in part, Hirsch v. Enright Refining Co.*, 751 F.2d 628 (3d Cir.1984); *on remand, B.F. Hirsch, Inc. v. Enright Refining Co.*, 617 F.Supp. 49 (D.N.J.1985).

Undoubtedly a corporation may satisfy the Section 1961 definitions of both "person" and "enterprise." *United States v. Hartley*, 678 F.2d 961, 988, *cert. denied*, 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1027 (1983). But Section 1962(c) requires that the liable person be "employed by or associated with any enterprise" which affects interstate or foreign commerce. The use of the terms "employed by" and "associated with" contemplates a person distinct from the enterprise. This clear distinction suggests that: "[i]f Congress had meant to permit the same entity to be the liable person and the enterprise under section 1962(c), it would have required only a simple change in language to make that intention crystal clear." *Haroco*, 747 F.2d at 400. This language was not included in Section (a). Section (a), far from indicating a distinction between the defendant and the enterprise, uses the word *"operation"*, suggesting that the two can be the same.

The broad reading of the language of section (a)—as opposed to section (c)—is grounded in the important policy provisions of RICO. This principle suggests that a corporation should not be held liable if it is merely the passive victim of a fraud perpetrated by an employee, but that a corporation should be liable if it has itself been the perpetrator or beneficiary of the fraud. *See Hirsch*, 617 F.Supp. at 51–52. Under Section 1962, the enterprise may play the various roles of victim, prize, instrument or perpetrator, and RICO liability is contingent on the role played. *See Blakey, The RICO Civil Fraud Action in Context*, 58 Notre Dame Law. 237, 307–325 (1982); *Haroco*, 747 F.2d at 401–402. *See also Hirsch*, 751 F.2d at 633 (noting *in dicta* that an indictment that failed to make the

---

rectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of Section 2, Title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or

the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce....

defendant/enterprise distinction, could pass muster if "the corporation had been charged under a different RICO provision" *citing Haroco*, 747 F.2d at 399–402). *See also Schoenfield v. First Commodity Corp.*, 793 F.2d at 31; *Rhoades v. Powell*, 644 F.Supp. 645 (E.D.Cal.1986).

Plaintiffs' complaint identifying a corporation/perpetrator comports with the reading of subsection (a) adopted by *Haroco, Guerdon, Hirsch*, and *Derry*. The complaint alleges an association-in-fact[7] of all the defendants: The Trust, Properties, CNTP, and all the individuals—G. Newton, D. Newton, Adkins, Stokes and Zucker. Am.Comp. at ¶ 22. The complaint goes on to allege that the defendants, as an enterprise, used income derived illegally from the operation of an enterprise under subsection (a) and controlled or maintained control of the enterprise under subsection (b). Am.Comp. ¶ 24(a) and (b).

*c. Section 1962(b)*

■ The language of Section 1962(b) also permits RICO claims in which the "person charged with the violation is not distinct from the enterprise."[8] *Pennsylvania v. Derry Const. Co.*, 617 F.Supp. at 943–44 ("a corporation, through a pattern of racketeering, might gain an interest or control of itself through the purchase of outstanding shares of stock with the proceeds from the pattern of racketeering."); *Guerdon*, 644 F.Supp. at 957. ("[T]he Court concludes that a complaint alleging

violations of Sections 1962(a) and (b) does not fail because the "person" is alleged to be the same entity as the "enterprise").

The gravamen of plaintiffs' complaint is that, as in *Derry Const.*, the corporation, CNTP, through a pattern of racketeering activity, combined with the other defendants, took control of the Trust. Am.Comp. ¶ 22.

*2. Pleading Enterprise With Particularity*

■ The second enterprise argument propounded by the defendants, and accepted by the Magistrate, is that the Amended Complaint is deficient because a mere allegation of an association-in-fact of conspiring defendants is not a sufficient RICO enterprise under the pleading standards constructed in *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786 (3d Cir.1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985); Mag.Rep. at 10. This Court disagrees.

The heart of the *Seville* opinion is that the standard for *pleading* an enterprise with sufficient particularity to satisfy Section 1962 is much lower than the standard for *proving* an enterprise under the same section. In *United States v. Riccobene*, 709 F.2d 214 (3d Cir.), *cert. denied sub nom., Ciancaglini v. United States*, 464

---

**7.** Even under the cases enforcing the "person"/"enterprise" distinction, it may be possible to plead that a group of corporations—each of which has a parent-subsidiary relationship with a co-defendant—collectively constituted the "enterprise" under the "association in fact" definition of "enterprise," 18 U.S.C. § 1961(4). In *Fustok v. ContiCommodity Services, Inc.*, 618 F.Supp. 1074 (S.D.N.Y.1985), the court upheld a Section 1962(c) claim in which plaintiff pleaded that three corporations (a parent, a subsidiary and a sub-subsidiary), constituted the "enterprise."

The rationale for this holding is the Seventh Circuit's discussion of the relationship between an "association in fact" and a "person" under the statute. That court stated that an "association in fact" enterprise does not fall within the RICO definition of a "person," since an "association in fact" is not "capable of holding a legal or beneficial interest in property," as required by 18 U.S.C. § 1961(3). Thus, "in the association

in fact situation, each participant in the enterprise may be a 'person' liable under RICO, but the association itself cannot be." *Haroco v. American National Bank & Trust Co.*, 747 F.2d at 401.

The Court will not adopt this reasoning with respect to Section 1962(c) because of the Third Circuit's holding in *Hirsch* that the defendant cannot also be the enterprise for Section 1962(c) purposes. But the *Haroco* reasoning provides an alternative ground for holding that the plaintiffs have adequately alleged a violation under Sections 1962(a) and 1962(b).

**8.** Section 1962(b) provides:

It shall be unlawful for any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983), the Third Circuit required a plaintiff to prove three things to establish the existence of an enterprise: (1) the enterprise is an ongoing organization; (2) that its members have established duties; and (3) that the enterprise must be separate from the pattern of racketeering activity. *Seville,* 742 F.2d at 789. But *Seville* specifically held that these elements do not have to be proved for pleading purposes:

> We need cite no authority for the proposition that the Federal Rules of Civil Procedure were designed to eliminate the vagaries of technical pleading that once plagued complaints.... Under the modern federal rules it is enough that a complaint put the defendant on notice of the claims against him. It is the function of discovery to fill in the details, and of the trial to establish fully each element of the cause of action.... In the present case, Seville identified the four entities it believed were the enterprises that had been marshalled against it. The rules of pleading require nothing more at this early juncture than that bare allegation.

*Seville,* 742 F.2d at 790; *see* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1215 (1969).

In *Seville,* the plaintiffs identified two corporations and two persons as separate enterprises. In their amended complaint, the plaintiffs identified a business trust, a limited partnership, a corporation and five individuals as an enterprise that was employed to defraud them. Am.Comp. ¶ 22. This is sufficient at the pleading stage.

The Magistrate was persuaded by the argument advanced in a *Seville* footnote that "a conspiracy to perform the underlying criminal offenses, standing alone, is not sufficient to allege the existence of an enterprise." Mag.Rep. at 10; *Seville,* 742 F.2d at 790 n. 5. But this conclusion was reached because the plaintiff in *Seville* attempted to argue that his complaint should be read to allege as an enterprise "any possible combination of the four named enterprises." To support this position, the plaintiff relied on "allegations in the complaint that the four defendants/enterprises conspired with each other to defraud Seville." *Id.* But in the case at bar, plaintiffs allege that *all* the defendants are *the* enterprise—there is no mention of combinations. Am.Comp. at ¶ 22. Plaintiffs do not suggest on the face of the complaint that the enterprise is the same thing as the pattern of racketeering activity—which it cannot be under *Seville. Id.*

Plaintiffs do suggest in their brief that PLP and CCM can be considered two additional possible enterprises—although they concede that these corporations were not plead in the amended complaint. Pl. Ans.Br. at 16. This Court will grant the plaintiffs leave to amend to include any additional entities as possible enterprises, as *Seville* implies that district courts have the power to do. *Id.; see, e.g., Guerdon,* at 957 n. 6, ("should other 'enterprises' be revealed, the Complaint must be amended to refer to them."). *Ideal Stencil Mach. & Tape Co. v. Merchiori,* 600 F.Supp. 185 (S.D.Ill.1985) (leave to amend RICO complaint).

### C. Pattern Of Racketeering Activity

Defendants next contend that plaintiffs failed to properly plead "a pattern of racketeering activity," as required by each subsection of Section 1962 and Rule 9(b) of the Federal Rules of Civil Procedure. Under Section 1961(5), a "pattern of racketeering activity" requires the commission of at least two acts of racketeering activity within a ten year period. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985). Under subsections (a), (b) and (c) of Section 1962, a plaintiff must properly plead a "pattern of racketeering activity." 18 U.S.C. § 1962(a), (b) and (c).

The Magistrate's Report never reached the question of whether the acts alleged by plaintiffs are sufficient to constitute a pattern of racketeering activity. Instead, the Report found that the acts of fraud were not pled with sufficient particularity under Rule 9(b) of the Federal Rules of Civil Procedure. Mag.Rep. at 11–12. The Court finds, however, that the acts alleged by the plaintiffs were sufficiently pled and that

those acts constitute a pattern. The acts alleged by plaintiffs are: (1) mail and wire fraud in connection with the CCM Transaction; (2) mail and wire fraud regarding the Plainsboro Transaction; and (3) mail and wire fraud involving attempted securities fraud concerning the aborted merger.

### 1. Rule 9(b): Pleading Fraud With Particularity

 The requirement of pleading fraud "with particularity" applies to allegations of fraud in civil RICO cases. Fed.R. Civ.P. 9(b); *Rand v. Anaconda-Ericsson, Inc.*, 623 F.Supp. 176, 180 (E.D.N.Y.1985). But focusing exclusively on the language of Rule 9(b) is regarded as too narrow an approach; instead, courts must take account of the "general simplicity and flexibility" contemplated by the Federal Rules of Civil Procedure. *See Christidis v. First Pennsylvania Mort. Trust*, 717 F.2d 96, 100 (3d Cir.1983), *quoting* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1298 at 407 (1969). This liberal gloss excuses plaintiffs from pleading with temporal or geographic specificity. In the RICO context, Rule 9(b) only requires that the "circumstances" of the alleged fraud be pled with sufficient particularity to place the defendants on notice of the conduct of which they are charged and to safeguard against spurious allegations. "It is certainly true that allegations of 'date, place or time' fulfill these functions, but nothing in the rules requires them," holds the Third Circuit. "Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Seville*, 742 F.2d at 791.

 The Court finds that the plaintiffs have provided alternative means of precision and substantiation to support their fraud claims. Plaintiffs allege that defendants engaged in mail fraud under 18 U.S.C. § 1341, and wire fraud under 18 U.S.C.

§ 1343. Am.Comp. ¶ 23(A), (B), and (C). The mail fraud and wire fraud are alleged in connection with the CCM transaction, the Plainsboro transaction and the aborted merger. Am.Comp. ¶ 18. (Attempted securities fraud is also alleged with respect to the aborted merger transaction. Am. Comp. ¶ 18 (referred to in ¶ 23)). In ¶ 18, the plaintiffs specifically plead in connection with the PLP and CCM transactions, the nature and date of the transaction, the alleged fraudulent activities, the entities involved, the amount of money involved, the purpose of the transactions, the benefits to the Controlling Stockholders and the effect on the Trust. Plaintiffs further allege that mail and wire communications took place in connection with these transactions. Am.Comp. ¶¶ 18(b), 18(p)–18(t). As in *Seville*, where the plaintiffs attached a detailed list of machines—the object of the fraud—to the complaint, the plaintiffs here attach a detailed notice of merger, sent through the mails, that describes all the relevant transactions. Am.Comp.Ex.A. *See Seville*, 751 F.2d at 791.

Plaintiffs' allegations are adequately specific to put the defendants on notice. The Plainsboro Transaction was alleged to be on August 22, 1985, involving $4,075,000. Am.Comp., ¶¶ 18(d) and (e); the CCM arrangement was from July 1, 1982 until November 30, 1985 for payments of $600,-000. Am.Comp. ¶ 18(c). The Notice of Merger was sent out on November 4, 1985 and contained all the facts relevant to the merger. Am.Comp. ¶¶ 18(g)–(h). But plaintiffs will be required to secure and plead the details surrounding the mail and wire fraud.[9] *See Chambers Dev. Co. v. Browning-Ferris Industries*, 590 F.Supp. 1528, 1539 (W.D.Pa.1984); *Eaby v. Richmond*, 561 F.Supp. 131, 137–38 (E.D.Pa. 1983); *Guerdon*, 644 F.Supp. at 959 ("by informing defendants of the precise transactions at issue, and the fraud alleged to have occurred in those transactions, the

---

**9.** Plaintiffs will be required to amend their complaint, within 30 days, to allege the details of the mail and wire fraud. Otherwise, the action will be dismissed. *See Odesser v. Vogel*, No. 85–6931, slip op. at 6 n. 2 (E.D.Pa. April 10, 1986) [Available on WESTLAW, DCTU database] (al-

lowing plaintiff leave to amend the *fourth* version of their complaint and to reallege activities "that plausibly could have involved the use of mails or wires" but that failed to provide the addresses or even the names of the recipients.).

Amended Complaint is clearly sufficient to place the defendants on notice of the precise misconduct with which they are charged.").

### 2. Predicate Acts For Pattern Purposes

 Having concluded that plaintiffs adequately alleged acts sufficient to put defendants on notice of fraud, the Court must now decide whether the acts alleged are sufficient to constitute a "pattern of racketeering activity." What constitutes a "pattern" for RICO purposes is currently one of the most hotly contested issues in the United States District Courts. Under the "pattern" guidelines adopted by this Court in recent decisions, however, the acts alleged by plaintiffs suffice.

Prior to the Supreme Court's first civil RICO decision, *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the lower courts had erected several barriers to the maintenance of a civil RICO action (e.g., the requirement that the defendant be somehow linked to organized crime). *Sedima* eliminated these barriers, but in their place, the Supreme Court suggested more specific requirements for proving a "pattern of racketeering activity":

> The definition of a "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern *"requires"* at least two acts of racketeering activity, § 1961(5) (emphasis added), not that it "means" two such acts. The implication is that while two acts are necessary, they may not be suf-

ficient. Indeed, in common parlance two of anything does not generally form a "pattern". 105 S.Ct. at 3295 n. 14.

Since *Sedima,* lower court decisions attempting to define the requirements for a pattern fall into three categories: (1) those requiring two or more separate schemes; (2) those requiring multiple transactions or episodes separated in time but not necessarily separate schemes; and (3) those in which the courts have not required anything more than two related predicate acts. This Court follows the majority of district court cases in this Circuit and adopts an intermediate approach between a strict pattern test that requires more than one criminal scheme,[10] and a liberal pattern test that only requires two or more predicate acts.[11]

In *Paul S. Mullin & Associates, Inc. v. Bassett,* 632 F.Supp. 532 (D.Del.1986), this Court held that a single scheme is sufficient to establish a pattern of racketeering activity. The Court also held, however, that the continuity necessary to establish a pattern requires some separation as well as relatedness of the acts constituting the racketeering activity. "This Court is loath to adopt a definition of pattern which turns on an assessment of whether one or multiple criminal schemes is involved.... Such a definition would be highly susceptible to manipulative semantics.... This Court will adopt the reasoning of cases such as *Kredietbank* and *Allington* that the 'continuity' necessary for a pattern requires some separation as well as relatedness of the acts in question." *Mullin v. Basset,* 632 F.Supp. at 541.[12]

---

10. *See Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.,* 615 F.Supp. 828 (N.D.Ill.1985) (plaintiff must plead and prove the commission of similar racketeering acts in two or more separate criminal "schemes"; *Rich Maid Kitchens, Inc. v. Pennsylvania Lumbermens Mutual Insurance Co.,* 641 F.Supp. 297 (E.D.Pa.1986).

11. *See, e.g., R.A.G.S. Couture, Inc. v. Hyatt,* 774 F.2d 1350 (5th Cir.1985); *Louan Properties, Inc. v. Mattel, Inc.,* 619 F.Supp. 1167 (S.D.N.Y.1985) (two acts which relate to each other and relate to one scheme satisfy the pattern requirement).

12. The Third Circuit has not reached the issue of whether more than one scheme or episode is necessary to prove a pattern. In *Malley-Duff*

*Associates, Inc. v. Crown Life Ins. Co.,* 792 F.2d 341, 353 n. 20 (3d Cir.1986), the court declined to interpret the Supreme Court's dicta in *Sedima* regarding the pattern requirement. The court did suggest, however, that an interpretation that a pattern must involve two different schemes was a "very restrictive definition". *Id. See Town of Kearny v. Hudson Meadows Urban Renewal,* 648 F.Supp. 1412, 1417 (D.N.J.1986).

Most courts in this Circuit, however, agree with *Mullin. Penturelli v. Spector,* 640 F.Supp. 868, 873–74 (E.D.Pa.1986); *United States v. Freshie,* 639 F.Supp. 442, 444–445 (E.D.Pa.1986); *LSC Associates v. Lomas Nettleton Fin'l. Corp.,* 629 F.Supp. 979, 981–82 (E.D.Pa.1986) (all holding that a single scheme, in certain instances,

In *Mullin,* plaintiffs' complaint was dismissed for failing to allege a "pattern" because the supposed misrepresentations occurred over a short period of time, were made to the same people, and took the same form. *Mullin,* 632 F.Supp. at 541.

This is not the case here. The acts plaintiffs allege are sufficiently intertwined because they all relate to a grand overall scheme hatched by the Controlling Stockholders to seize control of the Trust and then defraud the minority shareholders, including the plaintiffs. These acts are sufficiently distinct, however, because they occurred at different periods of time and are substantially different in nature. The CCM arrangement began on July 1, 1982; the Plainsboro transaction occurred on August 22, 1985; and the Notice of Merger was not sent out until November 4, 1985. Am.Comp. ¶ 18. The mail and wire fraud [13] involved in each action had a different purpose: the CCM arrangement to divert income; the PLP arrangement to divert a corporate opportunity; and the aborted Merger involved attempted fraud in securing plaintiffs' shares for less than a firm price.[14]

can constitute a "pattern".). *See also Town of Kearny,* 648 F.Supp. at 1418; *McClendon v. Continental Group,* No. 83–1340, slip op. at 8 (D.N.J. July 31, 1986) [Available on WESTLAW, DCTU database]; *see Kredietbank, N.V. v. Joyce Morris, Inc.,* No. 84–1903 (D.N.J. Jan. 9, 1986) [Available on WESTLAW, DCTU database]; *Allington v. Carpenter,* 619 F.Supp. 474, 478 (D.C.Cal.1985). *See also Hill v. Equitable Bank, N.A.,* 655 F.Supp. 631, 652 (D.Del.1987) ("*Hill IV*"); *Satellite Financial Planning Corp. v. First National Bank of Wilmington,* 646 F.Supp. 118 (D.Del. 1986).

**13.** Mail and wire fraud are punishable under RICO in connection with attempted securities fraud because of the language of the mail and wire fraud statutes. The mail fraud statute reaches anyone "having devised or intending to devise any scheme or artifice to defraud ... for the purpose of executing such scheme or artifice or *attempting* so to do...." 18 U.S.C. § 1341 (emphasis added). Although the language of the wire fraud statute, 18 U.S.C. § 1343, does not specifically mention attempted fraud, the statute has been interpreted to permit the punishment of attempted fraud. *United States v. Pollack,* 534 F.2d 964, 971 (D.C.Cir.1976), *cert. denied,* 429 U.S. 924, 97 S.Ct. 324, 50 L.Ed.2d 292 (1976). Because mail and wire fraud are specifically included in the definition of "racketeering activity" under 18 U.S.C. § 1961(1), mail and wire fraud in connection with attempted securities fraud are sufficient acts to constitute racketeering activity.

**14.** Much ink has been spilled by both parties on the question of whether attempted securities fraud alone can constitute a predicate act for RICO pattern purposes. This is the so-called "abandonment issue." *See* Am.Comp. ¶ 18(uu).

The Court today does not have to reach the abandonment issue. The Court has already held that there are three acts alleged that are sufficient to constitute a pattern of racketeering activity: (1) mail and wire fraud in connection with the CCM transaction; (2) mail and wire fraud in connection with the PLP transaction; and (3) mail and wire fraud in connection with the attempted securities fraud. But the Court will briefly discuss the problem of whether attempted securities fraud can constitute a predicate act, because this allegation may become a component of RICO allegations in the future.

18 U.S.C. § 1961(1) lists as a racketeering activity "fraud in the sale of securities." Defendants argue that once the merger was aborted, there was no purchase or sale of securities, and, therefore, there could be no fraud in the sale of securities as interpreted in a long line of cases dealing with the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). *See also Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975).

Plaintiffs counter with two arguments. First, they argue that the defendants committed fraud in the sale of securities by filing their Notice of Merger with the SEC. Second, they assert that "fraud in the sale of securities" should be read more broadly in the RICO context than in the context of the 1934 Act.

The Court is not persuaded by plaintiffs' first argument. Plaintiffs nowhere allege in their amended complaint that the filing of the Notice with the SEC violated Section 32 of the 1934 Act, 15 U.S.C. § 78(ff) (1986). Moreover, Section 1961 does not expressly refer to Section 32 of the 1934 Act in defining racketeering activity, and the mere filing of a Notice does not amount to "fraud in the sale of securities." Plaintiffs do not cite, and this Court cannot find, support for this proposition.

Plaintiffs' second argument is more subtle. It suggests that "fraud in the sale of securities" should be read more broadly in the RICO context than in the context of the 1934 Act. As a general matter, this Court is mindful of the Supreme Court's admonition that:

RICO is to be read broadly. This is the lesson not only of Congress self-consciously expansive language and overall approach, but also of its express admonition that RICO is to "be liberally construed to effectuate its remedial purposes." The state's "remedial purposes" are nowhere more evident than in the provision of a private right of action for those injured by racketeering activity.

The Court concludes that plaintiffs have adequately alleged a pattern of racketeering activity.

## III. DEFENDANTS' MOTION FOR RULE II SANCTIONS

Because the Court believes that plaintiffs have alleged a viable RICO claim, there is no need to discuss the imposition of Rule 11 sanctions.[15] The Court's review of the

Magistrate's Rule 11 determination is under a "clearly erroneous standard" and this Court concludes that the Magistrate's findings were not erroneous. They will be adopted *in toto*. [16]

Defendants' Motion to Dismiss is denied. Plaintiffs are granted leave to amend.

An Order will enter in conformity with this Opinion.

---

*Sedima, S.P.R.L. v. Inrex Co., Inc.,* 105 S.Ct. at 3286–87, *quoted in B.F. Hirsch, Inc. v. Enright Refining,* 617 F.Supp. 49, 51 (D.N.J.1985).

The Court also notes that Section 1962(d) of RICO punishes a conspiracy to commit any of the acts enumerated in Sections 1962(a), (b) or (c). If a court can prohibit a conspiracy to commit securities fraud, another court may well find in the future that attempted securities fraud constitutes a predicate act under RICO.

15. Courts rarely impose Rule 11 sanctions against RICO plaintiffs because good faith is strongly presumed given the unsettled nature of RICO pleading. *See Rhoades v. Powell,* 644 F.Supp. at 673 (denying sanctions when defects in RICO claim might be cured by amendment and legal theory was approved in at least one reported decision); *Circuit International, Inc. v.*

*Electro-Circuits, Inc.,* No. 85–8457 slip op. (N.D. Ill. July 30, 1986) [Available on WESTLAW, DCTU database] ("the pleading issues raised by defendants, especially the pattern and enterprise issues, have provided much trouble to bench and bar alike. It cannot be said that plaintiff's complaint was so far off the mark that Rule 11 ought to be invoked"); *Fustock v. ContCommodity Services, Inc.,* 618 F.Supp. 1076, 1080–81 (S.D. N.Y.1985) (sanctions denied, citing RICO's complexity and unsettled state of case law).

16. This Court finds the Magistrate's Report well reasoned and thorough and this Court may well have reached a different conclusion had it not been apprised of new developments after the submission of the Magistrate's Report.

APPENDIX ONE

KEY

1. Companies underscored and overscored are corporate defendants.
2. The individuals named beside the corporations they control are individual defendants.
3. A broken line indicates both a corporate relationship and a predicate act.