The TOWN OF KEARNY, a municipal corporation of New Jersey, Plaintiff,

v.

HUDSON MEADOWS URBAN RENEWAL CORP., formerly known as Mimi Urban Renewal Development Corp., formerly Mimi Development Corp., a corporation of New Jersey; Mimi Redevelopment Associates I, a partnership of New Jersey; Dolores Turco and Jerry Turco, individually; Jeryl Industries, Inc., a corporation of New Jersey; David C. Rowlands; Edmund Grimes; and James Testa, Defendants,

Hartz Mountain Industries, Inc., a New York corporation, Intervenor.

Civ. No. 84–4056.

United States District Court, D. New Jersey.

Dec. 2, 1986.

Norman A. Doyle, Jr., Kearny, N.J. for plaintiff.

Miller, Hochman & Myerson, Jersey City, N.J., for defendant James Testa.

Hayden & Perle, Hoboken, N.J., for defendant Dolores Turco.

Brown & Brown, Newark, N.J., for defendant Hudson Meadows Urban Development Corp.

Robert L. Brown, Newark, N.J., for defendant Jerry Turco.

David Biederman, Kearny, N.J. for defendant Jeryl Industries, Inc.

David C. Rowlands, pro se.

Edmund Grimes, pro se.

Waters, McPherson & McNeill, Secaucus, N.J., for intervenor Hartz Mountain Industries.

OPINION

SAROKIN, District Judge.

In this civil RICO case, intervenor Hartz Mountain Corp. moves for summary judgment. Defendants cross-move for summary judgment or alternatively, to dismiss the complaint. The court denies intervenor's motion for summary judgment. The court grants defendants' motion for summary judgment.

BACKGROUND

The following statement draws from intervenor Hartz Mountain's statement of facts based on the testimony in *United States v. Testa,* Crim No. 82–350 (D.N.J. 1983). Contested facts will be noted.

On December 15, 1978, the Town of Kearny and Hartz Mountain entered into a Master Leasing and Option Agreement pursuant to New Jersey statutory law. Under the lease, Hartz was to develop a tract of land in the Kearny Meadowlands.

Paragraph 19 of the agreement grants Hartz "a right of first refusal with regard to the sale, letting or hiring, of any portion of the balance of the 1,100 acre tract owned in part by the Town and in part by certain private owners of which the Redevelopment Area is a part." The paragraph states that Hartz shall have the opportunity to match "any bona fide offer" by a prospective developer on any part of the 1,100 acre first refusal tract. The paragraph refers to an annexed "survey map" that describes the tract.

Hartz filed the agreement and the accompanying maps with the Hudson County Register of Deeds. Hartz filed a survey map showing a right of refusal for 2,000 acres. According to defendants, this map had been marked as "N.G." by the town engineer. Defendants contend that the final map should have indicated a first refusal area of approximately 1100 acres.

Soon after the Hartz-Kearny agreement, the following individuals, all defendants, met at a restaurant in Harrison: Jerry Turco, "principal representative" of Mimi Development Corp. (Mimi) and sole owner and officer of Jeryl Industries; Dolores Turco, wife of Jerry Turco, then President and 20% shareholder of Mimi; David Rowlands, then Mayor of Kearny; Edmund Grimes, then Councilman in Kearny; James Testa, then Councilman in Kearny. At that meeting, Jerry Turco agreed to pay the three officials $75,000 in exchange for the right to have Mimi develop part of the Kearny Meadowlands property. The bribe was to be paid in three installments of $25,000: the first installment would be due when Kearny took official action concerning Mimi's rights; the second installment would be due when the lease was actually signed; the third installment would be due after the lease had been in effect.

On March 14, 1979, Kearny voted to adopt a Blight Resolution for the tract to be leased to Mimi; this resolution cleared the way for bids from developers. On July 31, 1979, the Town Council approved Mimi's proposal. (Apparently, Jerry Turco then paid the first $25,000 installment.) On August 8, 1979, Kearny entered into a Master Leasing and Option Agreement with Mimi. The land to be leased was part of Hartz's 2,000 acre first refusal tract, as that tract was defined in the survey map filed in Hudson County. Defendants contend that the land was not part of the 1100 acre tract upon which Kearny and Hartz actually agreed.

On August 9, 1979, Jerry Turco paid the second $25,000 installment to Grimes and Rowlands.

Hartz became aware of the Mimi lease in September 1979 and notified the Town in writing that Hartz considered the Mimi lease to be a breach of Hartz's first refusal right.

In early December 1979, the Turcos met with Rowland in North Arlington. Rowlands asked for the third installment. Jerry Turco replied that the money would be forthcoming when the council indicated that it would support Mimi in the conflict with Hartz. On December 10, 1979, the Town Council discussed the alleged conflict in the leases. On December 12, the Council passed a motion to notify Hartz by letter

that the Council saw no conflict between the Hartz and Mimi leases.

Immediately after this meeting, the Turcos met with Rowland and Grimes. At the meeting, the Turcos' attorney prepared the Council's letter to Hartz and Rowlands approved the draft. During the meeting, Dolores Turco delivered the final installment to Rowlands. This installment was $16,600 —Testa's share was not included, as the Turcos were dissatisfied with his efforts.

On June 2, 1980, Hartz filed a suit in the Superior Court of New Jersey against Mimi and the Town of Kearny. The suit sought invalidation of Mimi's lease. During discovery, Grimes, Rowland, Jerry Turco, and Dolores Turco each submitted affidavits supporting the legitimacy of the Mimi lease. Grimes and Rowland further swore to the position that Hartz had no prior rights to the property leased to Mimi.

On February 3, 1981, based on this and other discovery, Hartz entered into a stipulation of settlement with Mimi and the Town.

In early 1982, Rowlands and Grimes were convicted of federal offenses relating to their service as public officials. In November 1982, a federal grand jury indicted James Testa for six counts of "extortion" under 18 U.S.C. § 1951. After trial in which Rowland, Grimes, Jerry Turco, and Dolores Turco testified, Testa was convicted in May 1983. On February 3, 1983, Jerry Turco pled guilty to a one count information alleging that Turco conspired to devise a scheme defraud the citizens of Kearny, in violation of 18 U.S.C. § 1341. The information recounted two incidents of bribery: a payment by Turco in exchange for action by the Town to alleviate a flooding problem concerning Jeryl Industries (an entity wholly owned by Turco) and the Mimi lease transaction.

On October 5, 1984, the Town of Kearny filed a complaint in federal district court seeking damages under RICO and rescission of the Mimi lease. Pursuant to an order of September 23, 1985, Hartz intervened as of right in this action. Hartz's complaint of October 8, 1985 contains three counts alleging violations of RICO (specifically 18 U.S.C. 1962(c), (d)) and one count alleging fraud and misrepresentation under New Jersey law. Hartz demands treble damages against all defendants and an order vacating the state court stipulation of settlement.

Defendants Jerry Turco and Jeryl Industries, by way of amended answer filed December 6, 1985, counterclaim against Hartz for malicious abuse of process.

On January 27, 1986, plaintiff Town of Kearny moved for summary judgment. On February 20, 1986, intervenor Hartz moved for summary judgment against all defendants on all counts and moved for dismissal of the counterclaim. On May 30, 1986, defendant Dolores Turco cross-moved for summary judgment on all counts, or in the alternative to dismiss the intervenor's complaint. Counsel for defendants Jerry Turco and Hudson Meadows Urban Development Corp joined in Dolores Turco's application.

In an order dated June 26, 1986, the court entered an order for voluntary dismissal with prejudice as to

> all claims between and among the Town of Kearny and the settling defendants Hudson Meadows Urban Development Corp., formerly known as Mimi Urban Renewal Development Corp. and Mimi Redevelopment Associates, I; Dolores Turco and Jerry Turco.

The order stated that the dismissal of plaintiff Kearny's claims "shall not operate in any way to prejudice or limit the right of Hartz Mountain Industries to continue to litigate all of the claims set forth in its complaint."

On November 10, 1986, the court received a stipulation of settlement between the plaintiff Town of Kearney and defendants Grimes and Rowlands.

DISCUSSION

Hartz's federal claim, brought under 18 U.S.C. 1964(c),[1] alleges a violation of 18

---

1. "Any person injured in his business or property by reason of a violation of section 1962 of

U.S.C. § 1962(c).[2] Defendants contend that Hartz, as a matter of law, cannot prove the elements required to sustain a civil RICO action under Section 1964(c). Generally speaking, the elements of a violation of § 1962(c) are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.,* — U.S. —, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). Furthermore, a RICO plaintiff, in order to prevail on its § 1964(c) claim, must also show that that the conduct of the enterprise affects interstate commerce and that it "has been injured in its business or property by the conduct constituting the violation." *Id.*

There is no dispute in this case that the alleged conduct constitutes racketeering activity, or that the conduct affects interstate commerce. Thus, the court, in deciding this motion, must ascertain three things: first, whether any enterprise exists; second, whether this enterprise engaged in any pattern of racketeering activity; third, whether this pattern caused plaintiff any injury.

### 1. *Enterprise*

■ RICO defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Three elements are essential to a finding of "enterprise." *See United States v. Riccobene,* 709 F.2d 214, 221–224 (3d Cir.), *cert. denied,* 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983) (citing *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981)). First, there must be an ongoing organization with some framework or superstructure for making and carrying out decisions. Second, the various associates must function as a continuing unit—the membership can change, but each person must perform a role in the group consistent with the organizational structure discussed above. Third, the organization must be an entity separate and apart from the "pattern" of activity in which it engages.

Hartz alleges in their complaint that the enterprise in this case is that put forth in Par. 17 of plaintiff Kearny's amended complaint:

During that period between October 1, 1978 and December 30, 1979, the defendants Dolores Turco, Jerry Turco, Mimi Development Corp., Mimi Redevelopment Associates, the former mayor and two councilmen defendants Rowlands, Grimes, and Testa constituted an "enterprise" within the meaning of 18 U.S.C. 1961(4) in that said defendants constituted a group of individuals associated in fact.

At oral argument, counsel for Hartz indicated that Hartz indicated its intent to rest on the allegations contained in its current pleadings.

■ The association in fact alleged in the complaint fails to meet the third requirement—that the association is an entity separate and apart from the pattern of racketeering activity in which it is alleged to have engaged. The association must have "an existence beyond that which is necessary merely to commit each of the acts charged as predicate." *United States v. Riccobene,* 709 F.2d at 224. There is no indication in the complaint or on the record that Dolores Turco and Mimi associated with the Kearny officials except in connection with the charged predicate acts. All of the named defendants may have conspired to commit the predicate acts, but they do not constitute an ongoing enterprise.

Notwithstanding the failure of Hartz to allege a proper enterprise, the court finds

this chapter may sue therefor in any appropriate United States district court and shall recover threefold damages he sustains and the cost of the suit, including reasonable attorney's fees."

**2.** "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt."

that an enterprise existed consisting of an association of fact among defendants Jerry Turco, Rowlands, Grimes, and Testa.[3] First, the testimony at the Testa trial shows that this association was "ongoing" with a structure for making and implementing decisions. The individuals met numerous times in connection with two schemes. That a structure for decision-making existed is shown by the circumstances surrounding the drafting of the letter from the Council to Hartz. Second, the various associates functioned as a continuing unit—Turco provided the money and the town officials took the necessary action.

This association in fact meets the third requirement for an enterprise—it is an entity separate and apart from the pattern of activity in which it is alleged to have engaged. The four individuals associated to conduct a similar scheme to resolve the flooding problem for Jeryl Industries. Participation in a similar scheme is sufficient to establish that the enterprise existed separate and apart from the predicate acts. *See Riccobene,* 709 F.2d at 224; *General Accident Ins. Co. v. Fidelity & Deposit Co.,* 598 F.Supp. 1223, 1242 (E.D.Pa.1984).

### 2. *"Pattern" of Racketeering Activity*

The court must ascertain whether this enterprise—the association in fact of Jerry Turco, Testa, Grimes, and Rowlands—engaged in a "pattern" of racketeering activity

Section 1961(5) defines "pattern of racketeering activity" as requiring "at least two acts of racketeering activity ... the last of which occurred within ten years ... after the commission of a prior act of racketeering." The Supreme Court has suggested recently that narrowing this pattern requirement is an appropriate way of controlling the expansive reach of civil RICO. *See Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d

346 (1985). The Court, quoting a Senate report, noted "It is this factor of continuity plus relationship which combines to produce a pattern." *Id.* (quoting S.Rep. No. 91–617, p. 158 (1969)). Beyond this, though, the Court gave no specific guidance as to the proper interpretation of "pattern."

Since *Sedima,* a split in the circuits has developed as to whether the Court's "continuity plus relationship" language requires allegations of more than one criminal scheme or episode in order to prove a pattern. The Eighth Circuit has held that a series of acts undertaken in pursuit of a single scheme cannot constitute a "pattern." *Superior Oil Co. v. Fulmer,* 785 F.2d 252, 257 (8th Cir.1986). The Eleventh Circuit rejected the interpretation that predicate acts must occur in different criminal episodes; the court held that separate statutory violations sufficed, even if within the same scheme. *Bank of America National Trust & Savings Ass'n v. Touche Ross & Co.,* 782 F.2d 966, 971 (11th Cir. 1986).

The Third Circuit has not addressed the issue. In *Malley-Duff Associates, Inc. v. Crown Life Ins. Co.,* 792 F.2d 341, 353 n. 20 (3d Cir.1986), the court declined to interpret the Supreme Court's dicta in *Sedima* as to the pattern requirement. The court suggested, however, that the interpretation that a pattern must involve two different schemes was a "very restrictive definition." *Id.* Courts within the circuit have split on the issue. *Compare Perfection Corp. v. Dresser Industries,* 641 F.Supp. 782 (W.D. Pa.1986); *Rich Maid Kitchens v. Pennsylvania Lumbermens Mutual Ins. Co.,* 641 F.Supp. 297, 311–12 (E.D.Pa.1986); *Wright v. Everett Cash Mutual Ins. Co.,* 637 F.Supp. 155, 157–58 (W.D.Pa.1986); *Small v. Goldman,* 637 F.Supp. 1030, 1034 (D.N. J.1986) (all holding that a "pattern" required multiple schemes or episodes) *with Penturelli v. Spector,* 640 F.Supp. 868, 873–74 (E.D.Pa.1986); *United States v.*

**3.** The court has the power to direct the intervenor to amend its complaint to allege this enterprise. *See McLendon v. Continental Group,* 602 F.Supp. 1492, 1517 n. 20 (D.N.J.

1985). Given the court's conclusion that Hartz cannot allege the necessary elements of a RICO claim concerning this enterprise, *see infra,* such amendment is unnecessary.

*Freshie,* 639 F.Supp. 442, 444–45 (E.D.Pa. 1986); *Paul S. Mullin & Associates v. Bassett,* 632 F.Supp. 532, 539–41 (D.Del. 1986); *LSC Associates v. Lomas Nettleton Fin'l Corp.,* 629 F.Supp. 979, 981–82 (E.D. Pa.1986) (all holding that a single scheme, in certain instances, can constitute a "pattern").

■ This court recently has staked its position in this debate. We have rejected a "multi-scheme" requirement and adopted "a more fluid analysis which looks to the breadth and interrelationship of any given set of illegitimate activities." *McClendon v. Continental Group,* No. 83–1340, slip op. at 8 (D.N.J. July 31, 1986) [Available on WESTLAW, DCTU database]. The court stated that the relevant inquiry is "whether the relevant predicate acts are sufficiently numerous, related and ongoing to constitute a programmatic illegal infiltration of business." *Id; cf. Kredietbank, N.V. v. Joyce Morris, Inc.,* No. 84–1903, slip op. at 8 (D.N.J. Jan. 9, 1986) [Available on WEST-LAW, DCTU database] (finding that the mailing of two false affidavits did not constitute a pattern). The court, applying this test, concludes that the predicate acts surrounding the Mimi lease do not constitute a pattern of racketeering activity. Hartz alleges a pattern exists because the bribe involved three different payments in exchange for three related but distinct activities by the town officials. Furthermore, Hartz alleges that the pattern continued when defendants presented a coordinated false defense to the legitimacy of the lease in the state court proceeding. These acts form a single, discrete scheme; they cannot be said to be sufficiently numerous and ongoing to constitute a pattern. *Contra McClendon v. Continental Group,* No. 83–1340 (D.N.J. July 31, 1986) [Available on WESTLAW, DCTU database] (finding that a single scheme, consisting of years of activity involving hundreds of layoffs at nineteen plants, could be a pattern).

The court does find, however, that the enterprise did engage in a pattern of racketeering activity if the allegations concerning the Jeryl Industries bribe are considered as well. These two distinct episodes are sufficient to constitute a "programmatic infiltration" of the Town's activities.

### 3. *Injury*

■ Section 1964(c) states "Any person injured in his business or property by reason of a violation of section 1962" may recover treble damages in federal court. The Supreme Court has made clear that this section, in the context of a 1962(c) violation, requires that a *pattern* of racketeering be responsible for plaintiff's injuries.

> [T]he plaintiff only has standing if, and he can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.... Where the plaintiff alleges each element of the violation, the compensable injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise.

*Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 3285–86, 87 L.Ed.2d 346 (1985). Therefore, plaintiff cannot simply allege that some acts in a larger pattern injured it; the acts that caused plaintiff's injury, in themselves, must constitute a pattern.

■ Hartz's RICO claim fails because Hartz cannot allege that a pattern of racketeering caused their injury. Hartz's only injuries allegedly arose from the Mimi lease transaction. The court, as discussed above, found that the activity surrounding that transaction was not sufficiently continuous and related to form a pattern. Viewed from the opposite perspective, the only pattern identified by the court is the Mimi lease transaction and the Jeryl Industries flooding transaction; Hartz, however,

was not injured by this pattern because the Jeryl transaction in no way affected Hartz.

The court, though giving Hartz's allegations the broadest conceivable reading, concludes that Hartz's complaint does not make out the elements of a RICO violation. The court, though finding that an enterprise and a pattern does exist, holds that Hartz was not injured by this pattern. Because Hartz cannot prove that it was injured by a pattern of racketeering injury, the court grants defendants' motion for summary judgment as to Hartz's RICO claim.

The court, having granted summary judgment against Hartz on its sole federal claim, dismisses Hartz's pendent state law claim for lack of subject matter jurisdiction. In pendent jurisdiction cases, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *see Tully v. Mott Supermarkets, Inc.,* 540 F.2d 187, 196 (3d Cir.1976) (stating that if the federal claim can be disposed of on summary judgment, "the court should ordinarily refrain from exercising jurisdiction in the absence of extraordinary circumstances").

## CONCLUSION

The court concludes, as a matter of law, that Hartz was not injured by conduct of an enterprise constituting a pattern of racketeering activity. Therefore, the court grants defendants' motion for summary judgment as to Hartz's RICO claim (Counts 1–3 of the Intervenor's complaint). The court dismisses Hartz's pendent state law claim (Count 4 of the Intervenor's complaint) for lack of subject matter jurisdiction. The court denies Hartz's motion for summary judgment. The court grants Hartz's motion for dismissal of the counterclaim for abuse of process brought against it by defendants Jerry Turco and Jeryl Industries.[4]

4. The counterclaim is dismissed as unopposed; neither Jerry Turco nor Jeryl Industries present-

ed the court with any written submissions or oral argument in opposition to Hartz's motion.