The TOWN OF KEARNY, A Municipal Corporation of New Jersey

v.

HUDSON MEADOWS URBAN RENEWAL CORP. formerly known as Mimi Urban Renewal Development Corp.; Dolores Turco, Individually, Jeryl Industries, Inc., A Corporation of New Jersey, Mimi Urban Renewal Development Corp., Formerly Mimi Development Corp., A Corporation of New Jersey Mimi Redevelopment Associates, I, A Partnership of New Jersey, 3rd party Pltfs.

v.

David ROWLANDS, Edmund Grimes and James Testa, 3rd party Defts.

Hartz Mountain Industries, Inc., a New York Corporation (Intervening Pltf.)

Appeal of HARTZ MOUNTAIN INDUSTRIES, INC., Plaintiff-Intervenor, Appellant.

No. 87–5044.

United States Court of Appeals, Third Circuit.

Argued June 24, 1987.

Decided Sept. 25, 1987.

Bruce H. Nagel (argued), David W. Lentz, Nagel & Rice, West Orange, N.J., for Jeryl Industries, Inc. and Jerry Turco.

Michael R. Perle (argued), Hayden and Perle, Hoboken, N.J., for Dolores Turco.

Alan Dexter Bowman, Newark, N.J., for Mimi Development Corp., et al.

Kenneth D. McPherson, Jr. (argued), Waters, McPherson, McNeill, Secaucus, N.J., for Hartz Mountain Industries, Inc.

Before GIBBONS, Chief Judge, WEIS, Circuit Judge, and GILES, District Judge.[*]

GIBBONS, Chief Judge.

Hartz Mountain Corp. (Hartz), an intervenor, appeals from a summary judgment dismissing its claim for damages under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 (1982 & Supp. IV 1986) (RICO). The original RICO complaint was filed by the Town of Kearny, New Jersey, 648 F.Supp. 1412.[1] Hartz intervened of right, and filed a four count complaint alleging RICO violations as well as pendant state law fraud claims. The pendant state law claims were dismissed when the Court granted summary judgment on the RICO counts. The defendants significant for this appeal are Hudson Meadows Urban Renewal Corp., formerly known as Mimi Development Corp. (Mimi), Mimi Development Associates I, a partnership, Dolores Turco, Jerry Turco, and Jeryl Industries, Inc. (Jerold).[2] We conclude that there are genuine issues of material fact barring summary judgment on the RICO claims. Therefore, the judgment appealed from will be reversed.

Hartz is a major developer of industrial and commercial real estate. Its complaint alleges that Mimi, Jerold, and the Turcos, in violation of 18 U.S.C. § 1962(c), conducted an enterprise through a pattern of racketeering activity that injured Hartz's business or property. The district court, assuming that the conduct alleged in the Complaint is racketeering activity, and assuming further that if such activity oc-

curred, it affected interstate commerce, granted summary judgment on the ground that Hartz could not establish that it was injured by a "pattern," defined as consisting of at least two schemes, of racketeering activity. Absent such proof of racketeering injury, the district court held, there could be no civil RICO recovery under 18 U.S.C. § 1964(c). The district court's opinion purports to apply *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). We exercise plenary review, guided by the Supreme Court's definitive interpretation of section 1964(c).

A.

On December 15, 1978, pursuant to the Blighted Areas Act, N.J.Stat.Ann. § 40:55–21.1 to 55–21.15 (1967 & Supp.1986), the Town of Kearny and Hartz signed a Master Leasing and Option Agreement under which Hartz agreed to undertake the phased development of a large tract of meadowlands. Paragraph 19 of this agreement granted Hartz "a right of first refusal with regard to the sale, letting or hiring, of any portion of the balance of the 1100–acre tract owned in part by the Town and in part by certain private owners of which the Redevelopment Area is a part." Hartz was to be given written notice of any impending negotiated sale or lease of the Town land, and granted the opportunity to match, within 30 days, any bona fide offer by the prospective purchaser or tenant. The agreement, and an accompanying map, were filed with the Register of Deeds of Hudson County on January 19, 1979. The parties dispute whether the recorded survey map accurately reflects the agreement between Hartz and the Town as to the land included in the Paragraph 19 right of first refusal.

Soon after the Hartz-Kearny agreement was executed, David Rowlands, the Mayor

---

[*] Hon. James T. Giles, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

[1] The Town of Kearny Complaint was dismissed with prejudice pursuant to a stipulation of set-

tlement with Mimi, Delores Turco and Jerry Turco, Grimes and Rowlands.

[2] Third party defendants include David C. Rowlands, Edmund Grimes, and James Testa, former officials of the Town of Kearny.

of Kearny, and Edmund Grimes and James Testa, members of the Town Council, met at a restaurant with Jerry and Dolores Turco. Jerry Turco was the principal representative of Mimi, and the sole owner and officer of Jeryl. Dolores Turco, Jerry's wife, was the president of and 20% stockholder in Mimi. At this meeting Jerry Turco agreed to pay Rowlands, Grimes, and Testa $75,000 in exchange for the right to have Mimi develop a part of the Kearny meadowlands. The bribe was to be paid in three $25,000 installments: when the Town Council took official action on Mimi's development rights; when the lease was signed; and when the lease became effective.

On March 14, 1979 the Town Council adopted a Blight Resolution encompassing the tract that Mimi wanted. On July 31, 1979 the Town Council approved Mimi's development proposal for that tract. On August 8, 1979 the Town and Mimi executed a Master Leasing and Option Agreement for the tract. The tract is part of that on which Hartz asserts a right of first refusal on the basis of its recorded survey map. Turco paid two $25,000 installments to Grimes and Rowlands, the second on August 9, 1979. In September of 1979 Hartz became aware of the Mimi lease and notified the Town in writing that it considered that lease to be in violation of Hartz's first refusal right. In early December of 1979 Jerry and Dolores Turco met with Rowlands at a restaurant. When Rowlands requested the third $25,000 installment, Jerry Turco informed him that it would be paid when the Town Council did something to indicate that it was on Mimi's side in the conflict with Hartz.

On December 10, 1979 the Town Council met to discuss the alleged conflict between the Hartz and Mimi leases. Two days later it passed a motion to send a letter to Hartz expressing the view that there was no such conflict. Shortly thereafter, Rowlands and Grimes met with the Turcos and their attorney. The Turcos' attorney drafted a letter to be sent by Kearny to Hartz in accordance with the Town Council resolution. Dolores Turco delivered the final installment of the bribe; but only in the amount of $16,600, representing Rowlands'

and Grimes' shares, as the Turcos were dissatisfied with the efforts of Testa to help them.

On June 2, 1980 Hartz filed a lawsuit in the Superior Court of New Jersey against Mimi and Kearny, seeking to invalidate the Mimi-Kearny lease and to enforce Hartz's right of first refusal. In the course of that lawsuit Rowlands, Grimes, Dolores Turco and Jerry Turco submitted affidavits in support of the validity of the Mimi lease. Rowlands and Grimes swore that the Town had never agreed to convey to Hartz any rights in the tract leased to Mimi. Faced with these affidavits and other discovery, on February 3, 1981 Hartz entered into a stipulation of settlement with Mimi and the Town. When this stipulation of settlement was made, Hartz had no knowledge of the bribes paid by the Turcos.

At about the time that Hartz's Superior Court suit was being settled, federal prosecuting authorities were investigating the affairs of the Town of Kearny. Early in 1982 Rowlands and Grimes were convicted of federal offenses relating to their services as Town officials. In May of 1983, after a trial in which Rowlands, Grimes, Jerry Turco and Dolores Turco testified, Testa was similarly convicted. Meanwhile, on February 3, 1983 Jerry Turco pleaded guilty to an information charging that he conspired to defraud the citizens of Kearny in violation of 18 U.S.C. § 1341. That information recounts two incidents of bribery: the Mimi lease payments, and an earlier payment in exchange for action by the Town to alleviate a flooding problem on property belonging to Jeryl.

Thus the summary judgment record would support a finding that three installments of bribes were paid in connection with the Mimi lease and a separate bribe was paid in connection with the Jeryl flooding problem. The Mimi transaction affected Hartz's business or property. The earlier Jeryl flooding transaction did not, except remotely, in the sense that town expenditures for alleviating the flooding problem may have affected all taxpayers in the Town.

### B.

In ruling on the motion for summary judgment, the district court recognized that bribing public officials, and accepting such bribes, constitutes racketeering activity, and that such activity affects interstate commerce. The court then looked to whether an enterprise existed, whether the enterprise engaged in a pattern of racketeering activity, and whether that pattern caused Hartz any injury.

#### (1). Enterprise

The court ruled that an enterprise could be found, consisting of an association in fact among defendants Jerry Turco, Rowlands, Grimes, and Testa. That enterprise, it could be found, was ongoing, in that it met numerous times in connection with more than one scheme; Turco providing the money, while the Town officials took the necessary action. Moreover, the enterprise had a structure for decisionmaking, as evidenced by the circumstances surrounding the drafting by the Turcos' attorney of a letter implementing the decision of the Town Council. Finally, the association in fact could be found to be an enterprise "separate and apart from the pattern of activity in which it [allegedly] engage[d]," *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), because those associated in it engaged in more than one similar scheme—to wit, the Mimi bribery scheme and the Jeryl bribery scheme. *See United States v. Riccobene*, 709 F.2d 214, 223–24 (3d Cir.), *cert. denied*, 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983); *see also Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 427 (5th Cir.1987) (stating that "if ... individuals associate together to commit several acts, their relationship gains [the] ongoing nature" required of an association-in-fact). "The function of overseeing and coordinating the commission of several different predicate offenses and other activities on an on-going basis is adequate to satisfy the separate existence requirement." 709 F.2d at 224.

■ We agree that the enterprise identified by the district court satisfies the enterprise requirement of RICO. Dolores Turco and Mimi assert that they should not be considered to be a part of the enterprise for purposes of RICO civil liability because there is no evidence that either had anything to do with the Jeryl bribery scheme. Although neither is identified by the district court as a component of the enterprise, a trier of fact could find that they participated in its affairs in connection with the later Mimi bribery scheme. Such participation suffices to expose them to RICO civil liability. *See Bennett v. United States Trust Co. of New York*, 770 F.2d 308, 315 (2d Cir.1985), *cert. denied*, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986); *General Accident Ins. Co. v. Fidelity and Deposit Co.*, 598 F.Supp. 1223, 1243 (E.D.Pa.1984). Whether they are found to be inside the enterprise or outside it, they can be held liable if they are found to have participated directly or indirectly in the conduct of its affairs through a pattern of racketeering activities. *Cf. United States v. Adams*, 759 F.2d 1099, 1116 (3d Cir.1985) (stating that to be found guilty of a RICO conspiracy under § 1962(d) a defendant need only agree to the commission of the predicate acts, and need not personally commit two or more predicate acts).

#### (2). Pattern

The district court also ruled that the enterprise which it identified could be found to have engaged in a "pattern of racketeering activity" as required by 18 U.S.C. § 1961(5). Rejecting Hartz's contention that the three bribe payments made to obtain the Mimi lease satisfied the pattern requirement in and of themselves the Court nevertheless found a pattern consisting in the allegations of bribery both with respect to the Jeryl transaction and with respect to the Mimi lease—two distinct transactions. This ruling was predicated upon the Supreme Court's discussion in *Sedima* of the pattern requirement. That Court wrote:

As many commentators have pointed out, the definition of a "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a

pattern *"requires* at least two acts of racketeering activity," § 1961(5) (emphasis added), not that it "means" two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. No. 92–617, p. 158 (1969) (emphasis added). Similarly, the sponsor of the Senate bill, after quoting this portion of the Report, pointed out to his colleagues that "[t]he term 'pattern' itself requires the showing of a relationship.... So, therefore, proof of two acts of racketeering activity, without more, does not establish a pattern...." 116 Cong.Rec. 18940 (1970) (statement of Sen. McClellan). See also *id.* at 35193 (statement off Rep. Poff) (RICO "not aimed at the isolated offender"); House Hearings, at 665. Significantly, in defining "pattern" in a later provision of the same bill, Congress was more enlightening: "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 18 U.S.C. § 3575(e). This language may be useful in interpreting other sections of the Act. *Cf. Iannelli v. United States,* 420 U.S. 770, 789, 95 S.Ct. 1284, 1295, 43 L.Ed.2d 616 (1975).

473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14.

Since the *Sedima* discussion some courts have read section 1961(5) as requiring multiple schemes rather than multiple predicate crimes before a pattern of racketeering activities may be found. *See, e.g., Su-*

*perior Oil Co. v. Fulmer,* 785 F.2d 252, 254–57 (8th Cir.1986); *Perfection Corp. v. Dresser Industries,* 641 F.Supp. 782, 783–84 (W.D.Pa.1986); *Rich Maid Kitchens, Inc. v. Pennsylvania Lumbermens Mutual Ins. Co.,* 641 F.Supp. 297, 311–12 (E.D. Pa.1986); *Wright v. Everett Cash Mutual Ins. Co.,* 637 F.Supp. 155, 157–58 (W.D.Pa. 1986); *Small v. Goldman,* 637 F.Supp. 1030, 1034 (D.N.J.1986); *Northern Trust Bank/O'Hare v. Inryco, Inc.,* 615 F.Supp. 828 (N.D.Ill.1985). Other courts have held that a single scheme involving multiple offenses can satisfy the pattern requirement. *E.g. United States v. Ianiello,* 808 F.2d 184, 190 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 3229, 107 S.Ct. 3230, 97 L.Ed.2d 736 (1987); *Penturelli v. Spector,* 640 F.Supp. 868, 873–74 (E.D.Pa.1986); *United States v. Freshie,* 639 F.Supp. 442, 444–45 (E.D.Pa.1986); *Paul S. Mullin & Associates v. Bassett,* 632 F.Supp. 532, 539–41 (D.Del.1986); *LSC Associates v. Lomas Nettleton Fin. Corp.,* 629 F.Supp. 979, 981–82 (E.D.Pa.1986). This court, without deciding the issue, has discussed it. *Petro-Tech v. Western Co. of North America,* 824 F.2d 1349 (3d Cir.1987) (stating that if proof of multiple schemes were required, it would be satisfied by the large number of parties and protracted time period involved, but declining to hold that such a requirement exists); *United States v. Grayson,* 795 F.2d 278, 290 (3d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1899, 95 L.Ed.2d 505 (1987). *Malley-Duff & Associates v. Crown Life Ins. Co.,* 792 F.2d 341, 353 n. 20 (3d Cir.1986), —— U.S. ——, 107 S.Ct. 569, 93 L.Ed.2d 573 (1986), *aff'd.,* —— U.S. ——, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) (86–531). In *Malley-Duff* and *Grayson,* this court found that if a "pattern" of racketeering activity is defined to require proof of offenses having the same or similar results, participants, victims, methods of commission, or other interrelationships, then the interrelationships between the predicate acts alleged in each case constituted such proof. In *Grayson* those predicate acts were manufacture, possession, and distribution of methamphetamine and phencyclidine to members of the Pagan Motorcycle Club. In *Malley-*

*Duff* the predicate acts, all related to the termination of an insurance agency, included federal mail and wire fraud, subornation of perjury, and destruction of documents.

■ Assuming, as did the *Grayson* and *Malley-Duff* panels, that a pattern of racketeering activity for RICO purposes involves something more than proof of a series of isolated offenses by persons connected with the RICO enterprise, the summary judgment record contains it. There is evidence from which it could be found that Rowlands, Grimes, Testa and the Turcos, acting in concert over a long period of time, resorted to the offenses of receiving and paying bribes to corrupt the decisional processes of the Town of Kearny to their mutual financial gain. The Mimi bribes were paid in installments in order to assure that at every stage necesary to the achievement of the Mimi leasehold, that decisional process would be corrupted. The participants had already achieved success in corrupting the process leading to the Jerold flood control project. The separate bribes had the same or similar purposes. The participants were the same. The methods of commission were the same. One could decline to find a pattern here only by focusing on the fact that Hartz was a victim of the Mimi transaction but not a victim of the Jerold transactions. Common to both schemes, however, was another set of victims, the taxpayers and residents of the Town of Kearny. The Jerold bribes and the Mimi installments were all part of a related pattern of municipal corruption for the benefit of the common participants. Thus the district court properly rejected the defendants' contention that no pattern of racketeering activity could be found.

### (3). Racketeering Injury

■ The court granted summary judgment against Hartz because although an enterprise and a pattern of racketeering could be found, Hartz could not prove that it was injured by the pattern, rather than by the isolated Mimi transaction. That holding is inconsistent with the *Sedima* rejection of a requirement that a civil RICO plaintiff prove "racketeering injury." The

*Sedima* opinion makes plain that the injury which confers standing on a RICO plaintiff is injury flowing from the commission of the predicate act, not injury flowing from the pattern of such acts. 473 U.S. at 495, 105 S.Ct. at 3285. As the Court of Appeals for the Seventh Circuit recently explained:

> Apparently, the district court construed the phrase "injured ... by reason of a violation of [RICO] SECTION 1962," 18 U.S.C. § 1964(c), to require that the plaintiff suffer injury from each of the (at least two) acts necessary to state a RICO violation. Imposing such a requirement, however, would conflate what must be two separate inquiries: first, was there a pattern of racketeering activity violating RICO, and second, was the plaintiff injured by the RICO violation? We do not believe that a plaintiff, in order to state a claim under section 1964(c), must allege an injury to its business or property either caused by at least two predicate acts, or caused by all the acts adding up to a pattern. Rather we believe a plaintiff must prove only: (1) a violation of section 1962 (for example, a person furthering an enterprise through a pattern of racketeering activity), and (2) an injury directly resulting from some or all of the activities comprising the violation. At what targets the acts of racketeering activity are aimed goes to the question of whether a "pattern" has been demonstrated.

*Marshall & Ilsley Trust Co. v. Pate*, 819 F.2d 806 (7th Cir.1987) (footnote omitted). Reading into the statute a requirement that a civil plaintiff prove injury from the entire pattern rather than from any predicate act would, we believe, be inconsistent with the core congressional purposes behind its enactment. For example, if an organized crime group were to operate a protection racket, extorting money from each merchant in a community, then each merchant's injury would be separate, and therefore, under the district court's reasoning, none could recover. We hold, therefore, that the district court erred in granting summary judgment on the ground that Hartz lacked civil RICO standing.

**1269**

### C.

Mimi and Dolores Turco, as an alternative ground for upholding the summary judgment, urge that Hartz's real injury flowed not from the Mimi lease, but from the perjured testimony in the 1980 Superior Court proceeding which induced Hartz to settle that lawsuit. That testimony, they contend, happened more than six months after the RICO enterprise ended in December of 1979. We are not persuaded that this argument supports a summary judgment in their favor. A factfinder could find injury to Hartz's business or property from the execution of the Mimi lease alone. Moreover the perjured 1980 testimony could be found to establish the continued existence of the RICO enterprise through that time, and that perjury was a part of the pattern of racketeering activity.

### D.

■ As an alternative ground for upholding the summary judgment, Jerry Turco contends that his conduct in bribing the officials of the Town of Kearny should not render him a participant in a RICO enterprise. His theory is that he was a mere pawn in a much larger RICO enterprise controlled by Rowlands, Grimes, and Testa, which had many other shake down victims. This argument is wide of the mark. A party is not shielded from RICO liability merely because he was not one of the creators or prime movers of the enterprise. Participation in the enterprise, if substantial, as Jerry Turco's participation could be found to be, is enough to establish liability, *see General Accident Ins. Co. v. Fidelity and Deposit Co.*, 598 F.Supp. 1223, 1243 (E.D.Pa.1984), regardless of whether the timing of such substantial participation postdates the commencement of the enterprise. Both the captains and the lately enlisted foot soldiers in the enterprise are liable for the damage caused by their predicate acts.

### E.

The district court ruled correctly that a factfinder could find a RICO enterprise and a pattern of racketeering injury, but erred in holding that Hartz could not prove the requisite injury to its business or property. The judgment appealed from will therefore be reversed.