**Charles P. ARTHUR, et al., Plaintiffs,**

v.

**GUERDON INDUSTRIES, INC.,
et al., Defendants.**

Civ. A. No. 85–244–JJF.

United States District Court,
D. Delaware.

June 30, 1993.

Jeffrey Bove, of Connolly Bove Lodge & Hutz, Wilmington, DE. Nicholas Gilman, of Gilman & Pangia, Washington, DC, for plaintiffs.

Richard K. Herrmann, of Bayard Handelman & Murdoch, Wilmington, DE. Theodore B. Olson, Paul Blankenstein, and Timothy J. Hatch, of Gibson Dunn & Crutcher, Washington, DC, for Fleetwood defendants.

Jack B. Blumenfeld, of Morris Nichols Arsht & Tunnell, Wilmington, DE. Ralph I. Miller, of Weil, Gotshal & Manges, Dallas, TX, for defendant Redman Industries, Inc. and Redman Homes, Inc.

FARNAN, District Judge.

The Court has before it summary judgment motions filed by defendant Fleetwood Enterprise ("Fleetwood") and defendant Redman Industries, Inc. ("Redman").[1] Redman has also filed a Motion to Strike the affidavit of Eugene R. Best. Briefing has been completed on these motions and oral argument was held on June 9, 1993. For the reasons state below, Defendants' Motions for Summary Judgment will be granted.

## I. INTRODUCTION

For a comprehensive review of the background of this case the Court refers to the prior decisions on defendants' motions for dismissal and summary judgment. *See, Vietnam Veterans of America, Inc. v. Guerdon Indus., Inc.,* 644 F.Supp. 951 (D.Del.1986) (hereinafter "*Guerdon I*"); *Arthur v. Guerdon Indus., Inc.,* Civ. No. 85–244–JJF, March 23, 1990 Memorandum Opinion (hereinafter "*Guerdon II*"). In essence, the plaintiffs are seeking recovery both under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68 (1992) and state law.

---

1. Earlier Motions for Summary Judgment were filed by the defendants, however, the Court permitted the defendants to withdraw those motions in light of an Order entered on October 31, 1991 indicating that only one Summary Judgment Motion would be considered per defendant. Each of the moving defendants elected to withdraw its earlier motion and then, in late 1992, filed the currently pending motions.

The plaintiffs allege that defendants conspired to defraud thousands of Vietnam veterans under a loan guaranty program designed to assist veterans in purchasing mobile homes. *See,* Veterans Housing Act of 1970, 38 U.S.C. §§ 1801–1827 (1982 & Supp. 1992). According to plaintiffs, this conspiracy was accomplished by an "invoice-packing" scheme where the retailers of mobile homes received an undisclosed rebate from manufacturers at a time when such rebates were required to be disclosed. *See, Guerdon I* at 954–55. As a result of the defendants' actions, plaintiffs claim they were injured because they were forced to pay higher sums of principal amounts and finance charges causing many veterans to default on their loans. The subject loans were guaranteed by the Veterans Administration.

In prosecuting their case, plaintiffs on numerous occasions have amended their complaint to either restate their allegations or to add defendants. *See, Guerdon II; Arthur v. Guerdon Indus., Inc.,* Civ. No. 85–255–JJF, October 18, 1990 Memorandum Opinion (hereinafter "*Guerdon III*"). The present motions for summary judgment address the Fourth Amended Complaint filed by plaintiffs which followed the Court's opinion in *Guerdon II.*

## II. SUMMARY JUDGMENT MOTIONS

### A. SUMMARY JUDGMENT STANDARD

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). If there is no genuine issue as to any material fact then the moving party is entitled to judgment as a matter of law. *Id.* An issue is "genuine" only if the evidence is such that

a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Substantive law identifies which facts are "material" and only disputes over facts that "might affect the outcome of the suit under the governing law" will defeat summary judgment. *Id.*

■ The moving party need not affirmatively refute the elements; rather, they need only show the insufficiency of proof of those elements. *Houser v. Fox Theatres Management Corp.,* 845 F.2d 1225 (3d Cir.1988). When the moving party has discharged their burden, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)).

Any doubts that exist as to the existence of genuine issues of material facts are to be resolved against the movant. *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 900 (3d Cir.), *cert. dismissed,* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). Moreover, all inferences are to be viewed in light most favorable to the non-movant. *Id.*

The judge's function on summary judgment is merely to determine whether a genuine issue of fact for trial exists or whether the evidence is so one-sided that one party should prevail as a matter of law. *Liberty Lobby,* 477 U.S. at 251–52, 106 S.Ct. at 2511–12. The judge should not weigh evidence or determine the truth of any matters in dispute. *Id.* at 252, 106 S.Ct. at 2512.

### B. PARTIES' CONTENTIONS [2]

Defendants contend that summary judgment should be granted on the RICO claims asserted by plaintiffs because the Plaintiffs have failed to show: (1) that an enterprise

---

**2.** Although the defendants filed separate briefs on their motions for summary judgment, the principal arguments of each defendant are applicable to both defendants and therefore will be treated as such. Moreover, the plaintiffs responded to the motions by defendants as though they were jointly filed so no prejudice will inure to the plaintiffs. The argument that the rebate programs were volume based and therefore not subject to the VA loan disclosure requirements will not be addressed because the Court concludes that the plaintiffs have failed to establish the necessary elements of a RICO violation and therefore how these rebates are characterized by a defendant is irrelevant.

existed; (2) that a conspiracy existed; (3) that the Plaintiffs suffered any injury; and (4) that any predicate acts are supported by the record. Further, Defendants contend that summary judgment be entered in their favor with respect to the state law claims of Plaintiffs because the Court does not have independent jurisdiction over those claims.

### 1. SECTION 1962(c) RICO CLAIM

#### a. Existence of an Enterprise

On this element of the plaintiffs' RICO claim, the defendants contend that the plaintiffs have failed to provide any evidence to support the association-in-fact enterprise theory upon which plaintiffs rely. According to the defendants, although the plaintiffs contend that there was an association-in-fact enterprise of the manufacturing defendants and/or the retail dealers, no evidence of any organization or agreement among the defendants or any decision making structure has been nor can be shown.

Defendants contend that the only arguable evidence plaintiffs have provided to establish that an enterprise existed is the affidavit of Eugene R. Best.[3] Defendants contend that only Paragraph Thirteen of the Best Affidavit speaks to establishing an enterprise and Defendants argue that Paragraph Thirteen fails to implicate in any way the defendants named in the present lawsuit. Rather, Defendants argue, the affidavit speaks in general terms of all mobile home manufacturers and dealers and cannot be the basis for finding that a genuine issue of fact exists to permit this case to go forward.

Further, the defendants contend there is no evidence of any type of a continuing unit where decisions were made in a collusive fashion that would support a finding of an enterprise or an agreement. Also, according to the defendants, there is not any evidence that any relationship between the defendants existed which could be considered separate and apart from the alleged pattern of activity in which the defendants are said to have been engaged.

In sum, according to the defendants, summary judgment should be granted as the plaintiffs have failed to provide any evidence of an enterprise. Defendants argue that because the showing of an enterprise is an essential element of a civil RICO claim under § 1962(c) and the plaintiffs are unable to make such a showing, the defendants should not be required to further defend this claim.

Plaintiffs counter that there is proof of an enterprise and that they have shown this through establishing the relationship between the manufacturing defendants and the retail dealers. According to the plaintiffs, the relationship between the defendants and the retail dealers was founded upon "mutually beneficial ties such as exclusive sales agreements for the dealers, financing arrangements to assist the dealers, sales rebate agreements, special dealer prizes and other dealer encouragements and cooperative advertising." (Docket Item 318 at 31). At oral argument, the plaintiffs referred to Tabs 18 through 20 of the Appendix to their Opening Brief as clear evidence of the existence of an enterprise. (Docket Item 319).

Further, with respect to whether distinct functions and roles existed between the manufacturers and retailers sufficient to meet the second element for finding an enterprise, the plaintiffs again direct the Court to the items appearing at Tabs 18 through 20 of their Appendix. According to the plaintiffs, the manufacturers and dealers had distinct functions in selling mobile homes in a profit-making scheme under the VA program.

Finally, the plaintiffs contend that an enterprise existed that is separate and distinct from the individual defendants. Plaintiffs assert the enterprise was the collaboration of the parties while the individual defendants carried out the actions of the enterprise. Specifically, the plaintiffs contend that the defendants existed not only to carry out the illegal enterprise activities involved in the VA loan program but they existed and carried out other activities on an ongoing basis.

---

**3.** The Best affidavit is subject of a Motion to Strike filed by Defendant Redman (Docket Item 324), which will be denied.

### b. Proof of Injury

Defendants argue that the plaintiffs have not provided any proof of how the putative class was injured by the alleged activities of the defendants. According to the defendants, because no injury can be shown, the plaintiffs lack standing to bring this action.[4]

The defendants argue that the foundation of the plaintiffs Complaint and allegation of injury is based on a false factual premise. According to the defendants, although plaintiffs argue that the loan guaranty program was based on the retail price not exceeding 120% of the manufacturer's certified wholesale price the truth of the matter is that the loan amount, not the retail price, was restricted to 120% of the wholesale price. As such, defendants claim the plaintiffs cannot show injury and, in fact, on numerous occasions benefitted from the actions of the defendants. Therefore, because the retail price was set by competitive market forces and the rebates at issue, if having any effect at all, decreased the retailers cost and ultimately the retail price, defendants contend the plaintiffs cannot now show any injury occurred to them.

The plaintiffs counter that an injury can be established by virtue of the fact that veterans incurred greater debt than they were permitted to under the program. Specifically, plaintiffs allege that Congress intentionally limited the amount of debt and, in turn, the retail price that dealers were allowed to charge for the homes financed through the program. Thus, plaintiffs argue under defendants' pricing the sales price of the homes was not governed by the normal market forces, but rather a false element was impacting the price of which the buyer was unaware.

The plaintiffs argue that the military veteran purchasers, unaware of the rebates and the true nature of the retail price, were affected by assuming responsibility for greater debt. According to the plaintiffs:

> Although it is true that the veterans voluntarily chose to utilize the VA program,

they did not voluntarily choose to base their decision to use the program on false or misleading information. The veterans based their decision to use VA financing on the assumption that defendants would comply with the VA regulations limiting the loan amount and retail price to 120% of the true manufacturer's invoice cost. Any loan, and any repayment of a loan, in excess of 120% of the true manufacturer's invoice cost was an overpayment made in reliance that the loan was proper under the VA program.

(Docket Item 318, at 24). Thus, according to the plaintiffs the argument that the plaintiff purchasers voluntarily assumed the debt cannot withstand scrutiny.

Countering the defendants' argument that the plaintiffs benefitted rather than were injured by the rebated programs, the plaintiffs assert that there is no proof that the rebate was ever passed on to the purchaser. Plaintiffs argue that these rebates were used to "line the pockets" of the dealers to motivate them to purchase more mobile homes from the manufacturers.

Further, the plaintiffs contend that the defendants' characterization of the rebates as providing a benefit to the veterans who purchased the homes is erroneous. The plaintiffs argue that the program was in place to assure that the veterans would "forego the more expensive and better mobile home as a tradeoff for receiving the full backing of the federal government." (Docket Item 318, at 19). Because of the defendants' activities, the plaintiffs contend that they incurred additional debt that they otherwise would not have, and that they had to pay additional interest on the amount of that increased debt.

Finally, the plaintiffs contend that they had a right to rely on the representations made by the defendants to the Veterans Administration. Thus, while they may not have directly relied on the representations of the defendants the fraud perpetrated by the defendants was the proximate cause of their injury. As such, the plaintiffs claim they are

---

**4.** Although this argument is made in a general context as well as with respect to the RICO claim specifically, the Court will discuss it with respect to the RICO claims because the basis of this litigation rests on establishing a RICO violation.

entitled to relief for their injuries which resulted from the fraudulent scheme carried out by the defendants.

### c. Absence of Evidence of a Predicate Act

Defendants contend that there is no evidence of a predicate act for the plaintiffs to assert as required by Section 1962(c). The defendants argue that the law governing guaranty of loans by the Veterans Administration never addressed the inclusion or exclusion of manufacturer rebates and this issue did not come to light until the time that the Administration required manufacturers to certify the price of the homes to the retailers. The certification requirement came about by way of a Circular issued by the Veterans Administration and, as such, never had the full force of law, a point the Government assented to in bringing its action against the defendants. According to the defendants, the plaintiffs cannot now rely solely on the admissions made by the defendants to the Veterans Administration in a separate proceeding in order to prove the requisite predicate acts. Rather, defendants contend, the plaintiffs must prove, through independent evidence, that the defendants participated in fraudulent acts in order to satisfy the requirements of their RICO claim.

Plaintiffs respond that the defendants discussion of the Circular is misleading. According to the plaintiffs, the Circular may not be entitled to the weight accorded to matters of law, however, plaintiffs contend the Circular is entitled to deference as it is an interpretation of a regulation of the Veterans Administration. The plaintiffs further contend that the defendants, by falsely certifying invoices, committed a fraud that injured both the United States and the plaintiffs. Because the plaintiffs were properly relying on the Veterans Administration to enforce its regulations and the Circular provided an interpretation of those regulations, the plaintiffs claim that they should be able to rely on the guilty pleas and agreements entered into between the United States and the defendants in the separate proceeding to show that the defendants committed mail fraud, a predicate act under RICO. (Docket Item 318, at 37–38 fn. 17).

### 2. SECTION 1962(d) RICO CLAIM

Defendants contend that the plaintiffs are unable to establish that a RICO conspiracy existed, because they are unable to even show a RICO violation. Thus, according to the defendants, it would be impossible to prove a conspiracy to commit one of the activities prohibited by Sections 1962(a), (b), or (c).

According to the plaintiffs, they have presented more than enough evidence to support a finding of a conspiracy. The plaintiffs allege that their evidence demonstrates that the defendants agreed to make unlawful profits by selling mobile homes under the VA program by defrauding the plaintiffs through undisclosed rebates. The plaintiffs assert that Fleetwood and its subsidiaries had one conspiracy while Redman and its subsidiaries had another. As a result, plaintiffs contend the fact that Fleetwood and Redman made up the enterprise and each had their own ongoing conspiracy, a violation of 1962(d) is present with each conspiring to violate Section 1962(c).

### 3. STATE LAW CLAIMS

Defendants contend that plaintiffs have failed to provide any support of the alleged violations of state law and therefore summary judgment should be granted with regard to these claims. Even if plaintiffs could support their state law claims at this juncture, the defendants argue that the state law claims should be dismissed because there is no federal claim pending, once summary judgment is granted, to support the Court's exercise of its jurisdiction over them.

The Plaintiffs answer that their state law claims should not be dismissed particularly in light of the fact that they would be barred by the applicable Delaware statute of limitations. Given that the Court is entitled to exercise discretion as to whether to retain jurisdiction over state law claims once federal claims have been dismissed, the plaintiffs request that the Court either retain jurisdiction over these claims or review this matter at a later time.

## C. DISCUSSION

In an effort to simplify the discussion, the Court finds it appropriate that certain assumptions be adopted. First, it will be assumed that the defendants offered rebates to retailers. Second, it will be assumed that the defendants did not disclose the rebates to the Veterans Administration. Third, it will be assumed that the defendants should have disclosed these rebates to the Veterans Administration. And, finally, it will be assumed that the defendants did not disclose these rebates to the Veterans Administration and thereby failed to comply with DVB Circular 26–79–34.[5] With these assumptions in place, the remainder of this opinion will be predicated on the conclusion that the defendants failed to fulfill their obligations in accordance with the dictates of the Veterans Administration program.

Again, it is the duty of the plaintiffs to come forward with specific facts to show a genuine issue of material fact exists; it is not the defendants burden to refute the elements. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356; *Houser*, 845 F.2d 1225. In this eight year old litigation, the defendants have now sufficiently questioned the plaintiffs ability to prove the necessary elements of a RICO violation, so that the Court must determine if a genuine issue of material fact exists while viewing the record in the light most favorable to the plaintiffs.

### 1. SECTION 1962(c) RICO CLAIM

#### a. Existence of an Enterprise

Section 1962(c) provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise ... to conduct or participate ... in the conduct of such enterprise's affairs through a pattern of racketeering activity ...". 18 U.S.C. §§ 1961–68 (1992). As such, one element that must be proven, separate from the person to be held liable, is that an enterprise exists. *Guerdon I* at 958; *Guerdon II* at 32–33.

In order to prove an enterprise exists sufficient to meet the requirements of § 1962(c) one must show the three elements outlined in *United States v. Riccobene*, 709 F.2d 214 (3d Cir.), *cert. denied*, 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983) and *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). Accordingly, the plaintiff must have factual support for the following elements:

1) "evidence of an ongoing organization, formal or informal";

2) "evidence that the various associates function as a continuing unit"; and

3) existence, "separate and apart from the pattern of activity in which it engages."

*Riccobene*, 709 F.2d at 221–224.

The Plaintiffs, although arguing that an enterprise existed, have failed to provide credible evidence to support their allegation. While the plaintiffs point to items such as exclusive sales agreements, financing arrangements, sales rebate agreements, special dealer prizes and other dealer encouragements to show that a relationship between manufacturers and retailers existed which plaintiffs assert establish the existence of an enterprise, the Court concludes plaintiff lack proof of this element.

The evidence plaintiffs are relying on merely represents typical incentives to succeed in a competitive marketplace. There is no indication that these strategies resulted from any kind of agreement between the manufacturers and dealers nor between one manufacturer and another. The state of the business world often requires a manufacturer or seller of a service or product to provide incentives to a retailer or buyer in order to gain the exposure necessary to be successful in the marketplace. Absent such incentives, a seller may not be able to persuade a buyer to purchase a product or carry a product line for future resale and therefore would be unable to successfully market their product. There is no indication that there was even a

---

5. Because this assumption is being made it is unnecessary for the Court to address the legal effect that the Circular has on the issues before the Court. Were the Court not to assume that the defendants were legally obligated to disclose these rebate programs, consideration of that issue would be of importance. However, because the Court concludes that the plaintiffs have failed to show either an enterprise or an injury it is unnecessary to reach the question of whether a violation of the circular in and of itself establishes a predicate act within the meaning of RICO.

**280**

tacit agreement among the defendants and the retailers. In fact, it is clear there was only a one-sided endeavor to entice retailers to carry the manufacturer's product. On the present record, the Court concludes that the plaintiffs have not adduced evidence sufficient to support the existence of an ongoing organization, and thus, the Court concludes plaintiffs have failed to establish the first element of their RICO claim (i.e.), an enterprise.

■ Further, even if the Court were to conclude that the existence of an ongoing organization has been established by the plaintiffs, the Court concludes that there is no record support for finding that the various associates functioned as a continuing unit. Again, the plaintiffs have merely shown a distribution network where manufacturers provided a product to retailers who then distributed the product to the public. There is no evidence that a formal agreement or decision making structure was in place in order to further the activities of the alleged enterprise. Rather, what was in place is what any distribution channel requires, that is, manufacturers providing a product and incentives to the retailer who then markets the product to the public. The retailers were free to associate with any manufacturer they chose and they were not required to be a part of the decision making process nor were they bound by the decisions of the manufacturers. There simply is no evidence of an ongoing relationship with a decision making hierarchy present. The Court concludes that the one sided nature of the subject relationship is insufficient to show any decision making responsibility being carried out to further a RICO enterprise. Thus, the plaintiffs have failed to provide sufficient evidence for a reasonable trier of fact to conclude that an enterprise existed and, therefore, summary judgment is appropriate.

### b. Proof of Injury

■ To recover under 18 U.S.C. § 1962(c), the plaintiffs are required to present proof of an injury. *Klapper v. Commonwealth Realty Trust,* 657 F.Supp. 948, 953 (D.Del.1987). Further, that injury must have been proximately caused by the RICO violation of the

defendants. *Holmes v. Securities Investor Protection Corp.,* —— U.S. ——, ——, 112 S.Ct. 1311, 1318, 117 L.Ed.2d 532 (1992). In other words, the injury and the violation must have some direct relationship. *Id.*

■ In this case, the plaintiffs have failed to demonstrate that any veteran was injured by the conduct of the defendants. Although the plaintiffs have presented substantial argument regarding how an injury might occur, there is no proof that any injury did occur and, after eight years of litigation, the Court concludes that none can be shown. As discussed previously, it is the burden of the plaintiff to establish some factual support for its claims in order to survive a motion for summary judgment once the proof of their case has been called into question. Because the Court concludes that the plaintiffs have failed to provide any record support for finding an injury resulted from the conduct of the defendants, summary judgment must be granted to the defendants.

In this regard, the Court observes that the rebates that were not disclosed had no effect on the decision of the plaintiffs to incur debt. The plaintiffs independently decided to purchase a home and to incur debt. The actions of the defendants in no way affected the amount of the debt the plaintiffs agreed to incur nor the amount of interest on that debt that the plaintiffs agreed to pay. This is a situation where the plaintiffs most likely benefitted from the dubious conduct of the defendants, and thus, find it difficult to prove they were injured. The only item hidden from the plaintiff and the Veterans Administration was the amount of a rebate going from the manufacturer to the retailer, but the Court is convinced that plaintiffs have not shown how this rebate could have acted to increase the amount of money that plaintiffs had to pay for their mobile homes.

Likewise, plaintiffs have not demonstrated that the defendants conduct impacted the decision making of the plaintiffs other than to permit them, at the outset, to expand the number of options in their decision base. Perhaps the defendants activities did make, in a few instances, a mobile home affordable with the veteran financing program that otherwise would not have been possible, howev-

er this action did not amount to a fraud on the plaintiffs and no injury can be shown from such conduct.

Further, although the plaintiffs argue that the retail price was to be governed by the manufacturer's invoice price and that it could not exceed 120% of that amount, there is no proof nor basis for this argument. The regulations were explicit that it was the loan amount, not the retail price, that was not to exceed 120% of the certified invoice price. Thus, the plaintiffs argument that they were injured because the retail price was at 120% of an artificially high manufacturer's retail price is baseless. Had a retailer wanted to set the retail price at 150% of the manufacturer's list price there was nothing to prevent the retailer from doing so.[6] Although the Veterans Administration would only guarantee the loan at 120% of the manufacturer's price, there was no restriction on the amount that the retailer could charge.

In order to circumvent their own reliance on the certified manufacturer's price, the plaintiffs argue that they had a right to rely on the representations made by the defendants to the Veterans Administration. This may well be true, however it still fails to show how the plaintiffs were injured by any misstatements of the defendants. If anyone was injured by way of the defendants' conduct it was the Veterans Administration who were the guarantors of a loan with no ability to choose a less costly option. The plaintiffs were able to make a choice, regardless of the manufacturer's certified price, to purchase a less costly mobile home; the Veterans Administration on the other hand was obligated to provide financing so long as the loan amount was not greater than 120% of the manufacturer's certified price. While the Court might be willing to attribute reliance by the plaintiffs on representations made to the Veterans Administration, this does not eliminate the plaintiffs' need to show proof of an injury. Because the plaintiffs have not provided any proof of an injury, the Court concludes summary judgment is appropriate.

6. Likewise, if the retailer, for promotional purposes had made a limited offering of mobile homes at only 110% of the manufacturer's list

## 2. SECTION 1962(d) RICO CLAIM

Given the Court's conclusion that defendants are entitled to summary judgment on the alleged violation of Section 1962(c) they are also entitled to summary judgment on the alleged violation of Section 1962(d). Section 1962(d) simply adds another level of inquiry to the analysis. First, a RICO violation must be established and then it must be shown that the defendants conspired to violate the RICO statute for a violation of 1962(d) to be present. Absent a RICO violation there cannot exist a conspiracy to violate the RICO statute and therefore summary judgment is appropriate.

## 3. STATE LAW CLAIMS

Once a Court has disposed of the federal claims in a case the decision to retain jurisdiction is within the court's discretion and is not a matter of plaintiff's right. *United ed Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Schaffer v. Board of School District of Albert Gallatin Area School District,* 730 F.2d 910, 912 (3d Cir.1984). In exercising its discretion, the court is to consider the principles of comity, judicial economy, convenience and fairness to the litigants. *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

Although the plaintiffs claim they will be barred by the applicable Delaware statute of limitations they have failed to explain a legal theory, other than common law fraud, upon which they wish to proceed with respect to their state law claims. As the defendants pointed out both in their brief and at oral argument, the theory of recovery being advanced by the plaintiffs still appears uncertain, although eight years has passed since this lawsuit was commenced. For their part, rather than clarifying their theory of recovery on the state law claims, Plaintiffs simply address whether or not the Court could exercise jurisdiction over the claims. There is no question that, in the exercise of discretion, the Court has the ability to retain jurisdiction, however, the Court is persuaded

price the regulations would not have prohibited this activity.

that this is not a case where such an exercise of its discretion would be appropriate.

The plaintiffs have no factual support to establish injury whether based on a federal statute or on a state law theory. Absent the ability to demonstrate an injury, the plaintiffs simply cannot recover for the alleged misrepresentations made by the defendants. There is no question that some of the rebates should have been disclosed, however there is similarly no question that the failure to disclose had no injurious impact on the plaintiffs. Thus, considering all the circumstances present, the Court will abstain from exercising jurisdiction on plaintiffs' state law claims because the Court concludes there is no likelihood the plaintiffs can demonstrate the necessary element of injury which would be required to press plaintiffs' claims.

## III. CONCLUSION

For the reasons discussed, the defendants' Motion for Summary Judgment will be granted.

An Order consistent with this Memorandum Opinion will be entered.